# United States Court of Appeals for the District of Columbia Circuit

## No. 25-7171

EMILIA KUENTZ; THOMAS CARPENTER, individually
and on behalf of all others similarly situated,

*Plaintiffs-Appellants,*

*v.*

CACI INTERNATIONAL INC.; CACI, INC. - FEDERAL; CACI, LLC -
COMMERCIAL; ABC COMPANIES 1 - 25, (UNKNOWN CACI COMPANIES),

*Defendants-Appellees.*

---

METROPOLITAN WASHINGTON EMPLOYMENT LAWYERS
ASSOCIATION,

*Amicus Curiae for Appellant.*

*On Appeal from the United States District Court for the District of Columbia
in No. 1:24-cv-02496-DLF, Dabney L. Friedrich, U.S. District Judge*

## BRIEF FOR PLAINTIFFS-APPELLANTS

THOMAS EILER
MICHAEL K. AMSTER
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
(301) 381-1327
teiler@zagfirm.com
mamster@zagfirm.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Emilia Kuentz and Thomas Carpenter (collectively, "Appellants"), by and through undersigned counsel, hereby submits the following Certificate as to Parties, Rulings, and Related Cases:

(1)   Parties

    a. Plaintiffs below were Emilia Kuentz and Thomas Carpenter. All plaintiffs are Appellants before this Court.

    b. Defendants below were CACI International, Inc., CACI, LLC – Commercial, and ABC Companies 1 – 25. All defendants are Appellees before this Court.

    c. No amici appeared in the District Court below.

    d. The Metropolitan Washington Employment Lawyers Association ("MWELA") intends to file an amicus brief in this Court on behalf of Appellants.

(2)   Rulings Under Review

    a. The ruling under review is the Memorandum Opinion and Order of the United States District Court for the District of Columbia, per the Hon. Dabney L. Friedrich, Dist. Ct. Dkt. 25, entered September 30, 2025, granting Appellees motion to dismiss, 2025 U.S. Dist. LEXIS 193432, 2025 WL 2779954.

(3)   Related Cases

    a. The case on review has not been before the Court or any other court besides the United States District Court for the District of Columbia in the original proceeding appealed from. There are no related cases.

**TABLE OF CONTENTS**

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

TABLE OF AUTHORITIES ...................................................................................iv

I.    Jurisdictional Statement....................................................................1

II.   Statement of Issues .........................................................................2

III.  Statement of Case ...........................................................................2

IV.  Summary of Argument ....................................................................3

V.    Standard of Review..........................................................................6

VI.  Argument ........................................................................................6

        a.    CASH PAID IN LIEU OF BENEFITS IS INCLUDABLE IN THE REGULAR RATE............................................................6

            i.    The Regular Rate Under the FLSA and DCMWA .....................7

            ii.    41 U.S.C. § 6707(e) is Unambiguous ........................................9

            iii.   The DOL Regulations Contradict the FLSA And SCA............11

            iv.   The District Court's Erroneous Interpretation ..........................14

                  1.    41 U.S.C. § 6707(e) Is Unambiguous and Reliance on Statutory Construction Tools Was Inappropriate...................................................15

                  2.    The District Court Misapplied the Cannon of Superfluity ...................................................17

                  3.    Appellants' Interpretation Is Consistent with the Remedial Purpose of the SCA and the FLSA ...............20

                  4.    41 U.S.C. § 6707(e) Does Not Control the Calculation of Overtime Under DC Law........................21

        b.    WAGE DETERMINATIONS ARE AUTOMATICALLY EFFECTIVE UPON THE EXERCISE OF AN OPTION ON A SCA CONTRACT OR THE ANNIVERSARY DATE OF THE CONTRACT..................................................................22

c. THE DCWPCL PERMITS RECOVERY OF WAGES OWED PURSUANT TO DISTRICT OR FEDERAL LAW, EVEN IF THOSE WAGES ARE SET FORTH IN THE SCA ..........27

i. District of Columbia Law Provides a Broad Definition of Collectible Wages ...............................................................30

ii. The Lack of a Private Right of Action Under the SCA Does Not Stop Appellants' Meritorious Claims ......................34

1. This Matter Presents No Primary Jurisdiction Problem ........................................................................35

2. There Is No End Run Present in This Matter .................40

a. The DOL's Administrative Enforcement Mechanism is not Appellants' Exclusive Administrative Remedy ......................................41

b. Well-Established Preemption Doctrines Do Not Prevent Appellants' Claims .....................46

3. Therefore, the District Court's Reliance on the End Run Theory Must Be Rejected ...............................48

VII. Conclusion ...........................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Amaya v. Power Design, Inc.*,
833 F.3d 440 (4th Cir. 2016) ...................................................................... 48, 49

*Barnes v. Akal Sec., Inc.*,
2005 U.S. Dist. LEXIS 12268 (D. Kan. 2005)............................................. 10, 12

*Bonner v. Metro. Sec. Servs.*,
2011 U.S. Dist. LEXIS 26251 (W.D. Tx. 2011) ...................................................10

*Brown v. General Services Administration*,
425 U.S. 820 (1976) .................................................................................... 42, 43

*Butler v. Fidelity Techs. Corp.*,
685 So. 2d 676 (La. Ct. App. 1996) ....................................................................46

*C&E Servs., Inc. of Wash v. D.C. Water & Sewer Auth.*,
310 F.3d 197 (D.C. Cir. 2002)..................................................................... 34, 39

*Canty v. Ferguson*,
2025 U.S. App. LEXIS 13182 (D.C. Cir. 2025) ...................................................2

*Chan v. City of New York*,
1 F.3d 96 (2nd Cir. 1993) ...................................................................................44

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992) ...........................................................................................15

*Consumer Product Safety Comm'n v. GTA Sylvania, Inc.*,
447 U.S. 102 (1980) .............................................................................................6

*Corley v. United States*,
556 U.S. 303 (2009) ...........................................................................................17

*D. Ginsberg & Sons, Inc. v. Popkin*,
285 U.S. 204 (1932) ...........................................................................................14

*Danielsen v. Burnside-Ott Aviation Training Ctr.*,
746 F. Supp. 170 (D.D.C. 1990)............................................................. 38, 39, 43

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*,
941 F.2d 1220 (D.C. Cir. 1991)........................................... 30, 34, 36, 38, 39, 41

*Dawson v. Marshall*,
561 F.3d 930 (9th Cir. 2009) ...............................................................6

*District of Columbia v. Exxon Mobil Corp.*,
89 F.4th 144 (D.C. Cir. 2023) .............................................................47

*Driscoll v. George Wash. Univ.*,
938 F. Supp. 2d 19 (D.D.C. 2013)........................................................31

*Fawn Mining Corp. v. Hudson*,
80 F.3d 519 (D.C. Cir. 1996)................................................................6

*Garcia v. Skanska USA Bldg., Inc.*,
324 F. Supp. 3d 76 (D.D.C. 2018)............................... 29, 30, 36, 41, 49

*Grochowski v. Phoenix Constr., Ypsilon Constr. Corp.*,
318 F.3d 80 (2d. Cir. 2003) ...................................................... 40, 41, 44

*Hamilton v. Hojeij Branded Food, Inc.*,
41 A.3d 464 (D.C. 2012) ......................................................................31

*Hercules v. Logan Grill, Inc.*,
2020 D.C. Super. LEXIS 23 (D.C. Super. Ct. 2020) ...........................31

*Hibbs v. Winn*,
542 U.S. 88 (2004) ...............................................................................17

*Himmelman v. MCI Commc'ns Corp.*,
104 F. Supp. 2d 1 (D.D.C. 2000) .........................................................36

*IBEW, Local 113 v. T & H Servs.*,
8 F.4th 950 (10th Cir. 2021)................................................................37

*Inkrote v. Prot. Strategies, Inc.*,
2009 U.S. Dist. LEXIS 101070 (2009) ................................................48

*Isufi v. Prometal Constr., Inc.*,
927 F. Supp. 2d 50..............................................................................44

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*,
534 U.S. 124 (2001) .............................................................................44

*Johnson v. Prospect Waterproofing Co.*,
813 F. Supp. 2d 4 (D.D.C. 2011) .........................................................32

*Labor & Indus. v. Lanier Brugh*,
135 Wn. App. 808 (App. Div. 1 2006)..................................................46

*Longo v. Trojan Horse Ltd.*,
  992 F. Supp. 2d 612 (E.D.N.C. 2014) ................................................36

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) ................................................13

*Marx v. Gen. Revenue Corp.*,
  568 U.S. 371 (2013) ................................................18

*Matthews v. Guest Servs., Inc.*,
  2025 U.S. Dist. LEXIS 145209 (E.D.N.C. 2025) .......................................... 46, 48

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ................................................47

*Menlo Service Corp. v. United States*,
  765 F.2d 805 (9th Cir. 1985) ................................................20

*Midwest Maintenance & Constr. Co. v. Vela*,
  621 F.2d 1046 (10th Cir. 1980) ................................................20

*Miranda v. Centerra Servs. Int'l, Inc.*,
  2025 U.S. Dist. LEXIS 267673 (S.D. Ca. 2025) .......................................... 12, 16

*Miscellaneous Service Workers, etc. v. Philco-Ford Corp.*,
  661 F.2d 776 (9th Cir. 1981) ................................................42

*Moore v. Valder*,
  65 F.3d 189 (D.C. Cir. 1995) ................................................6

*Murphy v. NCAA*,
  584 U.S. 453 (2018) ................................................46

*Naranjo v. Spectrum Security Services, Inc.*,
  172 Cal. App. 4th 654 (2nd Dist. Ct. App. 2009) ................................................46

*Oliverio-Still v. AVMAC LLC*,
  2025 U.S. Dist. LEXIS 37731 (S.D. Ca. 2025) .......................................... 11, 12

*Pantoja v. Zengel*,
  2011 U.S. Dist. LEXIS 154845 (S.D. Fl. 2011) ................................................36

*Public Employees Ret. Sys. v. Betts*,
  492 U.S. 158 (1989) ................................................13

*Pulsifer v. United States*,
  601 U.S. 124 (2024) .......................................... 14, 17, 19

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) ...........................................................................................14

*Randolph-Sheppard Vendors of America v. Weinberger*,
795 F.2d 90 (D.C. Cir. 1986)..............................................................................42

*Ransom v. FIA Card Servs., N.A.*,
562 U.S. 61 (2011) ..............................................................................................18

*Rattler-Bryceland v. Boutchantharaj Corp.*,
2023 U.S. Dist. LEXIS 253189 (W.D. Ok. 2023)........................................ 10, 12

*Reeves v. 7-Eleven, Inc.*,
2024 U.S. Dist. LEXIS 133058 (D.D.C. 2024)....................................................36

*Reiter v. Cooper*,
507 U.S. 258 (1993) ............................................................................................35

*Rimaihi v. Avictecture, Inc.*,
2022 U.S. Dist. LEXIS 207937 (D.D.C. 2022)....................................... 37, 41, 49

*Rivas v. United Am. Sec., LLC*,
2026 U.S. Dist. LEXIS 35584 (D.D.C. 2026)........................................... 11, 16

*Ronaldson v. Nat'l Ass'n of Home Builders*,
2021 U.S. Dist. LEXIS 255215 (D.D.C. 2021)....................................................31

*Rotkiske v. Klemm*,
140 S. Ct. 355 (2019) ..........................................................................................15

*Searcy v. Smith*,
111 F.4th 111 (D.C. Cir. 2024) ...........................................................................47

*Smith v. Clark/Smoot/Russell*,
796 F.3d 424 (4th Cir. 2015) ..............................................................................37

*Trinity Services, Inc. v. Marshall*,
593 F.2d 1250 (D.C. Cir. 1978)...........................................................................19

*United States ex rel. Wall v. Circle C*,
697 F.3d 345 (6th Cir. 2012) ..............................................................................37

*United States v. Babcock*,
250 U.S. 328 (1919) ............................................................................................42

*United States v. Barrow*,
109 F.4th 521 (D.C. Cir. 2024) .............................................................................6

*United States v. Dan Caputo Co.*,
  152 F.3d 1060 (9th Cir. 1998) ...................................................................37

*United States v. Montgomery*,
  578 F. Supp. 3d 54 (D.D.C. 2021) .............................................................18

*United States v. Philip Morris USA Inc.*,
  686 F.3d 832 (D.C. Cir. 2012) ...................................................................35

*United States v. Pogue*,
  19 F.3d 663 (D.C. Cir. 1994) ......................................................................2

*United States v. W. Pac. R.R. Co.*,
  352 U.S. 59 (1956) .....................................................................................35

*United States v. Wishnefsky*,
  7 F.3d 254 (D.C. Cir. 1993) .........................................................................6

*Wigod v. Wells Fargo Bank, N.A.*,
  673 F.3d 547 (7th Cir. 2012) ......................................................................40

*Williams v. Enter. Res. Plan. Int'l, LLC*,
  2025 U.S. Dist. LEXIS 122858 (S.D. Ca. 2025) ................................. 11,12

*Williams v. United States Dep't of Labor*,
  697 F.2d 842 (8th Cir. 1983) ......................................................................20

*Willner v. Dimon*,
  761 Fed. Appx. 1 (2019) ...............................................................................6

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ...................................................................................47

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ............................................................................................2

28 U.S.C. § 1331 ............................................................................................1

28 U.S.C. § 1367 ............................................................................................1

28 U.S.C. § 1391(b) ........................................................................................1

29 U.S.C. § 201 ..............................................................................................1

29 U.S.C. § 206 ............................................................................................24

29 U.S.C. § 207(a)(1) ......................................................................................7

29 U.S.C. § 207(e) .................................................... 4, 8, 9, 10, 11, 12, 19

29 U.S.C. § 207(e)(4) .................................................................... 9, 10

29 U.S.C. § 626(f) ........................................................................................13

40 U.S.C. § 3141 ............................................................................................5

40 U.S.C. § 6701 ............................................................................................2

41 U.S.C. § 6507(b) ......................................................................................45

41 U.S.C. § 6701 .................................................................................... 5, 10

41 U.S.C. § 6701(1) ......................................................................................18

41 U.S.C. § 6702(a) .................................................................................. 6, 22

41 U.S.C. § 6703 .................................................................... 18, 19, 39

41 U.S.C. § 6703(1) .................................................................... 6, 7, 22

41 U.S.C. § 6703(2) .................................................................... 6, 7, 22

41 U.S.C. § 6703(3) .................................................................... 6, 22

41 U.S.C. § 6703(4) .................................................................... 6, 22

41 U.S.C. § 6703(5) .................................................................... 6, 22

41 U.S.C. § 6705 .................................................................... 44, 45, 48

41 U.S.C. § 6705(b) ......................................................................................45

41 U.S.C. § 6707(a) ......................................................................................45

41 U.S.C. § 6707(e) ................ 4, 7, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 50

42 U.S.C. § 2000e ...................................................................................................42

42 U.S.C. § 2000e-16 .............................................................................................45

49 U.S.C. § 10701(a) .............................................................................................35

29 C.F.R. § 4.1a(h) ........................................................................................... 23, 26

29 C.F.R. § 4.1a(i) ...................................................................................................23

29 C.F.R. § 4.145 ............................................................................................. 24, 25

29 C.F.R. § 4.152 ....................................................................................................28

29 C.F.R. § 4.171 ................................................................................................ 7, 19

29 C.F.R. § 4.177(a) ........................................................................................... 7, 19

29 C.F.R. § 4.177(e) ......................................................................................... 11, 12

29 C.F.R. § 4.191 ....................................................................................................45

29 C.F.R. § 4.3 ................................................................................................. 28, 37

29 C.F.R. § 4.3(c) ...................................................................................................23

29 C.F.R. § 4.4 ................................................................................................. 25, 26

29 C.F.R. § 4.4(a)(1) ..............................................................................................22

29 C.F.R. § 4.4(a)(2) ..............................................................................................23

29 C.F.R. § 4.5(a) ...................................................................................................22

29 C.F.R. § 4.51 ..........................................................................................22, 28, 37

29 C.F.R. § 4.55 ......................................................................................................22

29 C.F.R. § 778.109 .................................................................................................8

29 C.F.R. § 778.200 .................................................................................................8

29 C.F.R. § 778.200(c) ........................................................................................ 8, 12

29 C.F.R. § 778.214(e) ...........................................................................................11

29 C.F.R. § 778.7 ............................................................................................. 11, 12

48 C.F.R. § 22.1006(c)(1) .......................................................................................23

48 C.F.R. § 52.222-43 ..................................................................................23, 24, 26

D.C. Code § 32-1001 ................................................................................................1

D.C. Code § 32-1002(7)............................................................8

D.C. Code § 32-1003(c) ........................................ 7, 21

D.C. Code § 32-1301 ..............................................1

D.C. Code § 32-1301(3)........................................ 3, 24, 31, 32

D.C. Code § 32-1302 .......................................... 33, 50

D.C. Code § 32-1305(a)........................................ 26-27, 30

D.C. Code § 32-1305(b)........................................ 32, 39

D.C. Code § 32-1308(1)(A) ....................................33

Fed. R. App. P. 4(a)(1)(A) ......................................2

Fed. R. Civ. P. 12(b)(6).......................................... 1, 3, 6, 27

Fed. R. Civ. P. 15(a)(1)(B) ....................................1

## I. Jurisdictional Statement

On August 29, 2024, Plaintiffs-Appellants Emilia Kuentz ("Ms. Kuentz") and Thomas Carpenter ("Mr. Carpenter") (collectively, "Appellants") brought a class and collective action complaint against Defendants-Appellees CACI International, Inc. ("CACI International"), CACI, Inc. – Federal ("CACI Federal"), CACI, LLC – COMMERCIAL ("CACI Commercial"), and ABC Companies 1–25 ("Unknown CACI Companies") (collectively, "Appellees") in the United States District Court for the District of Columbia ("District Court") for violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), D.C. Code § 32-1001, *et seq.* ("DCMWA"), and D.C. Code § 32-1301, *et seq.* ("DCWPCL"). On October 22, 2024, Appellants filed their First Amended Complaint as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1)(B) with additional factual allegations and the same legal theories as the initial Complaint.

The subject matter jurisdiction of the District Court was proper pursuant to 28 U.S.C. §§ 1331 and 1367. Venue was proper in the District Court pursuant to 28 U.S.C § 1391(b).

Appellees moved to dismiss Appellants' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). On September 30, 2025, after motions practice, United States District Judge Dabney Friedrich ("Judge Friedrich") issued a Memorandum Opinion and Order dismissing Appellants' First Amended Complaint. On October

28, 2025, Appellants timely filed their Notice of Appeal pursuant to Fed. R. App. P. 4(a)(1)(A).

As such, pursuant to 28 U.S.C. § 1291, this appeal is properly before the United States Court of Appeals for District of Columbia Circuit, as the appeal arises from a final order of the District Court disposing of all claims with respect to the parties.

## II.     Statement of Issues[1]

(1)     Did the District Court err in determining that cash paid in lieu of fringe benefits based on SCA wage rates is excludable from the FLSA's "regular rate"?

(2)     Did the District Court err in finding that SCA wage determinations are not effective upon the exercise of an option on a SCA contract or the anniversary date of the contract?

(3)     Does the DCWPCL permit recovery of wages owed pursuant to district or federal law, even if those wages are set forth by the SCA?

## III.    Statement of Case

Appellants brought class and collective action claims against Appellees for violations of the FLSA, DCMWA, and DCWPCL. Appellants claims were brought on behalf of all CACI employees in the District of Colombia who performed public work subject to the Service Contract Act, 40 U.S.C. § 6701, *et seq.* ("SCA").

---

[1] This Statement of the Issues is slightly different than that filed previously. Appellants note that "[t]he statement of issue is non-binding and does not limit the scope of the appeal." *Canty v. Ferguson*, 2025 U.S. App. LEXIS 13182, at *1 (D.C. Cir. 2025) (citing *United States v. Pogue*, 19 F.3d 663, 666 (D.C. Cir. 1994)).

As alleged in Appellants' First Amended Complaint, Appellees excluded cash paid in lieu of fringe benefits from the computation of Appellants' overtime premium compensation, lowering Appellants' overtime received. Also, Appellees failed to compensate Appellants all wages due pursuant to "a contract between an employer and another person or entity [and/or] District or federal law"[2] as set forth in public Wage Determinations issued by the Department of Labor ("DOL") and contracts between Appellees and the federal government.

The District Court dismissed Appellants' claims pursuant to Fed. R. Civ. P. 12(b)(6), prior to the commencement of discovery. The District Court found that the FLSA does not require that cash paid in lieu of benefits be included in the "regular rate" calculation of SCA contractors' overtime premium compensation. The court also ruled that the SCA's rate determinations do not automatically update, and even if they did, Appellants could not collect those rates pursuant to the DCWPCL. For the reasons set forth below, those proffered reasons were faulty, in error, and the findings of the District Court are due to be reversed, and this matter remanded for further hearings as necessary.

## IV. Summary of Argument

The District Court erred in three (3) great respects: (1) cash paid in lieu of fringe benefits paid directly to service contractors' employees must be included in

---

[2] D.C. Code § 32-1301(3).

employees' "regular rate" for the purposes of calculating their overtime premium. (2) by statute, regulation, and contract, the Wage Determinations *are* effective upon service contractors upon the exercise of an option on a contract subject to the SCA by a contracting agency or the anniversary or renewal of a contract subject to the SCA; and (3) the DCWPCL *does* provide a remedy for employees when an employer fails to pay their employees in accordance with "a contract between an employer and another person or entity [and/or] District or federal law."

At the outset, like many cases involving federal procurement statutes, the District Court's opinion is murky at best as to its reasoning. Appellants dissect the District Court's findings and opinion to the best of their abilities.

First, the District Court broke with the great weight of authority and created a new reading of the FLSA's "regular rate" relying on 41 U.S.C. § 6707(e). The definition of the "regular rate" required "all renumeration" be included, unless specifically excluded. 29 U.S.C. § 207(e). The FLSA does not exclude cash paid in lieu of fringe from "all remuneration" and the SCA is consistent with that reading. 41 U.S.C. § 6707(e). Conjuring a "restrictive" reading of that statute, the District Court inserts a comma into the statutory text to conclude that the SCA and the FLSA should be construed discordantly rather than consistently. Specifically, the District Court refused to acknowledge that the SCA means what it says: "the regular…rate of pay of the service employee does not include any fringe benefit payments

4

computed under [41 U.S.C. § 6701, *et seq.*] which are excluded from the definition of 'regular rate' under Section 7(e) of the [FLSA]."

Second, the Code of Federal Regulations ("CFR") explain that the Wage Determinations publicly published online are effective. However, the District Court found via footnote that Wage Determinations issued by the DOL are not automatically effective. In doing so, the District Court relied solely on a resource book from the Wage and Hour Division of the DOL and a regulation. Neither the regulation nor the resource book supports the District Court's finding that Appellants were not entitled to updated wage rates. Indeed, clear federal procurement regulations make updating Wage Determinations mandatory and automatic.

Next, the District Court cited to the alleged preclusive effect of the SCA in the form of the "end run theory"; an often cited and criticized legal theory positing that Congress intended to prohibit private parties from holding federal contractors liable for failure to pay SCA rates under non-SCA causes of action. However, the District Court's insinuation that the "end run theory" should preclude Appellants' meritorious claims should be rejected. Indeed, this determination is at odds with Judge Friedrich's prior application of the same principles to a similar matter related to the Davis-Bacon Act, 40 U.S.C. § 3141, *et seq*. ("DBA").

Accordingly, and as more thoroughly explained herein, the District Court's opinion is in error and should be reversed and remanded to the District Court for further proceedings.

## V. Standard of Review

"We review statutory interpretation by a District Court *de novo*." *Fawn Mining Corp. v. Hudson*, 80 F.3d 519, 521 (D.C. Cir. 1996) (citing *United States v. Wishnefsky*, 7 F.3d 254, 255 (D.C. Cir. 1993)) "As always, we begin by examining the text of the statute." *Id.* (citing *Consumer Product Safety Comm'n v. GTA Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). "We also apply a *de novo* standard of review for a district court's dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim." *Willner v. Dimon*, 761 Fed. Appx. 1, 3 (2019) (citing *Moore v. Valder*, 65 F.3d 189, 192 (D.C. Cir. 1995)). Plainly, "[*d*]*e novo* review means that the reviewing court does not defer to the lower court's ruling but freely considers the matter a new, as if no decision has been rendered below." *United States v. Barrow*, 109 F.4th 521, fn. 1 (D.C. Cir. 2024) (quoting *Dawson v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009)) (cleaned up).

## VI. Argument

### a. CASH PAID IN LIEU OF BENEFITS IS INCLUDABLE IN THE REGULAR RATE

Contracts between private entities and the federal government, which are valued over $2,500.00, are subject to the SCA. *See* 41 U.S.C. §§ 6702(a), 6703(1)–

(5). These contracts and the SCA require that private entities provide their employees with specific wage rates and fringe benefits. *See* 41 U.S.C. § 6703(1)–(2). Fringe benefits take one of two forms: (1) provision of a *bona fide* fringe benefit; or (2) compensation in the form of cash commensurate with the value of a *bona fide* fringe benefit. *See* 29 C.F.R. § 4.177(a) (identifying the options between furnishing cash in lieu of fringe benefits and a *bona fide* fringe benefit); *see also* 29 C.F.R. § 4.171 (defining what *bona fide* fringe benefits are).

The SCA also has a statutory provision which governs how these fringe benefits should be counted for the purpose of calculating overtime compensation owed under any federal law. *See* 41 U.S.C. § 6707(e). At the core of Appellants' assignment of error with the District Court below, is the correct interpretation of this statute and how overtime should be calculated. As set out below, cash paid in lieu of fringe benefits, paid directly to the employee, must be included in the employee's "regular rate" for the purposes of calculating the employee's overtime rate.

### i. The Regular Rate Under the FLSA and DCMWA

The FLSA requires that employers pay employees at a rate not less than one and one-half times the employee's "regular rate" of pay for all overtime hours the employee works each week. 29 U.S.C. § 207(a)(1) (emphasis added); *see also* D.C. Code § 32-1003(c) (similarly requiring extra compensation for hours worked over

forty "at a rate not less than 1 ½ times the regular rate at which the employee is employed.").

"The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

The FLSA defines the "regular rate" "to include **all remuneration** for employment paid to, or on behalf of, the employee, but shall not be deemed to include" eight specific statutory exclusions (such as gifts, paid time off, discretionary bonuses, stock options, certain premium pay for certain hours, and health and similar benefits paid to a third person pursuant to a bona fide plan) set forth therein. 29 U.S.C. 207(e) (emphasis added); *see also* D.C. Code § 32-1002(7) (defining "regular rate" near synonymously with the FLSA's definition and citing to the same).

If remuneration for employment is not explicitly excluded from the "regular rate", it must be included as part of the "regular rate" for the purpose of calculating an employee's "one and one-half times" overtime rate. 29 U.S.C. 207(e); 29 C.F.R. § 778.200.  As set forth in 29 C.F.R. § 778.200(c): "Only the statutory exclusions are authorized. It is important to determine the scope of these exclusions, since all remuneration for employment paid to employees which does not fall within one of

these seven exclusionary clauses **must be added into the total compensation** received by the employee before his regular hourly rate of pay is determined." *Id.* (emphasis added).

Notably, 29 U.S.C. § 207(e)(4) specifically excludes contributions made by an employer to a trustee or third person pursuant to a bona fide fringe benefit plan from the regular rate. (excluding "contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for"). However, 29 U.S.C. § 207(e) does not exclude cash paid *directly* to an employee, in lieu of the employee actually receiving benefits, from the "regular rate."

Put another way, cash paid in lieu of fringe benefits, including those required by the SCA, must be *included* in the regular rate for the purpose of paying overtime. Indeed, the SCA has a provision which unambiguously confirms consistency with the FLSA's definition of the "regular rate": 41 U.S.C. § 6707(e). However, as discussed below, this provision has been mutated, twisted, and turned into something it was never meant to mean.

### ii. 41 U.S.C. § 6707(e) is Unambiguous

As noted above, the SCA has a provision which explains how the fringe benefits provided thereunder should be calculated for the purposes of overtime work hours. *See* 41 U.S.C. § 6707(e). The SCA calculates overtime compensation

consistently with the FLSA. *Compare id. with* 29 U.S.C. § 207(e). Specifically, 41 U.S.C. § 6707(e) plainly provides benefit payments made to *bona fide* third parties (as set forth in 29 U.S.C. § 207(e)(4)) are excluded from the regular rate, consistent with the FLSA. Nothing in this text or the SCA creates a new statutory exemption from the FLSA's definition of "regular rate." The text reads as follows:

> In determining any overtime pay to which a service employee is entitled under Federal law, the regular or basic hourly rate of pay of the service employee does not include any fringe benefit payments computed under this chapter [41 U.S.C. § 6701, *et seq.*] which are excluded from the definition of "regular rate" under section 7(e) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 207(e)).

Multiple courts from across the country have interpreted the plain language of this statute to mean what it says. *See Barnes v. Akal Sec., Inc.*, 2005 U.S. Dist. LEXIS 12268 (D. Kan. 2005) ("Section [6707(e)] of the SCA does not appear on its face to be ambiguous as to whether the standards for inclusion of cash payments in lieu of benefits are the same under the FLSA and the SCA" and "[T]he plain language of [§ Section 6707(e)] appears to this court to unambiguously manifest Congress' intent that the regular rate be calculated identically under both the FLSA and the SCA"); *see also Bonner v. Metro. Sec. Servs.*, 2011 U.S. Dist. LEXIS 26251 (W.D. Tx. 2011); *Rattler-Bryceland v. Boutchantharaj Corp.*, 2023 U.S. Dist. LEXIS 253189 at *9 (W.D. Ok. 2023) ("The plain language of [Section 6707(e)] provides that the regular rate does not include any fringe benefit payments that are excluded from the

regular rate under the FLSA."); *Oliverio-Still v. AVMAC LLC*, 2025 U.S. Dist. LEXIS 37731, at *12 (S.D. Ca. 2025) ("By its plain terms, the SCA…excludes only payments 'which are excluded from the definition of 'regular rate' under [the FLSA].'"); *Williams v. Enter. Res. Plan. Int'l, LLC*, 2025 U.S. Dist. LEXIS 122858, at *5 (S.D. Ca. 2025) ("Under Section 6707(e)'s plain language, fringe benefit payments are excludable form the regular rate of pay only if they are excluded under [the FLSA]."); *Rivas v. United Am. Sec., LLC*, 2026 U.S. Dist. LEXIS 35584, at *29 (D.D.C. 2026) ("The Defendants are right that 41 U.S.C. § 6707(e) excludes certain 'fringe benefit payments' from being treated as part of the 'regular or basic hourly rate of pay' for the purpose of determining overtime pay. But the categories of fringe payments it excludes **are those specified by 'section 7(e) of the [FLSA]' in other words, the same exclusions already applied by the DCMWA's definition of 'regular rate'**.") (emphasis added).

### iii. The DOL Regulations Contradict the FLSA And SCA

The DOL has issued regulations which contradict the plain language of the SCA and the FLSA. *See* 29 C.F.R. § 778.7; *see also* 29 C.F.R. § 778.214(e); *see also* 29 C.F.R. § 4.177(e). These regulations seemingly provide an exclusion from the "regular rate" that is not set forth in 29 U.S.C. § 207(e). Specifically, these regulations provide that SCA contractors may exclude from the "regular rate" cash paid directly to employees in lieu of fringe benefits. *See id.*

11

However, these exclusions are not based on statute and directly contradict the clear mandates of 29 U.S.C. § 207(e).  Indeed, six courts from three separate federal judicial circuits (the Fifth, Ninth, and Tenth) have found that these regulations plainly contradict the FLSA. *See Barnes*, 2005 U.S. Dist. LEXIS 12268, at *14 ("[T]he [DOL] regulations are contrary to the Court's reading of the SCA, explicitly stating that fringe benefit payments under the SCA are excluded from the regular rate."); *see also Bonner*, 2011 U.S. Dist. LEXIS 26251, at *11 ("[T]he [DOL] regulations are not supported by the plain language of the SCA and FLSA."); *see also Rattler-Bryceland*, 2023 U.S. Dist. LEXIS 253189, at *8 ("[D]eference to the DOL regulations, which contradict the plain language of the statute, is inappropriate."); *see also Oliverio-Still*, 2025 U.S. Dist. LEXIS 37731, at *12 ("[The] DOL regulations, 29 C.F.R. §§ 778.7 and 4.177(e),…are contrary to the statute they purport to interpret."); *see also Williams*, 2025 U.S. Dist. LEXIS 122858, at *5–6 ("SCA Section 6707(e) does not exclude fringe benefits payments from the FLSA's regular rate, and the DOL regulations to the contrary do not control."); *see also Miranda v. Centerra Servs. Int'l, Inc.*, 2025 U.S. Dist. LEXIS 267673, at *36 (S.D. Ca. 2025) ("[T]he Court declines to adopt a regulatory interpretation that is at odds with the plain text."). These regulations are especially strange given that the DOL recognizes that "[o]nly the statutory exclusions [from the FLSA's "regular rate"] are authorized." 29 C.F.R. § 778.200(c).

Regulations can be used to interpret statutes; but those regulations cannot contradict the black letter of the statute. "[I]nterpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). However, "no deference is due to agency interpretations at odds with the plain language of the statute itself. Even contemporaneous and longstanding agency interpretations must fall to the extent they conflict with statutory language." *Public Employees Ret. Sys. v. Betts*, 492 U.S. 158, 171 (1989), *overruled on other grounds by* 29 U.S.C. § 626(f). Notwithstanding the same, the SCA was passed into law in 1965, but the regulations relied upon by the District Court were not issued until 1968. JA 181 (highlighting when the SCA regulations were issued).

Importantly, "[i]n exercising [independent] judgment [in determining the meaning of statutory provisions]…, courts may–as they have from the start–seek aid from the interpretations of those responsible for implementing particular statutes." *Loper Bright Enters.*, 603 U.S. at 394. "The court fulfills [the independent judgment] role by recognizing constitutional delegations, 'fix[ing] the boundaries of [the] delegated authority,'…, and ensuring the agency has engaged in 'reasoned decisionmaking' within those boundaries[.]" *Id.* at 395.

The DOL has abused its statutory authority by issuing and maintaining regulations which manifestly contradict the black letter of the FLSA. The DOL has no authority under any statute or regulation to engraft additional exclusions from the "regular rate" under the FLSA where it was not permitted by Congress. This seizure of legislative power by the DOL cannot be reasoned decision making within its statutory boundaries. Accordingly, these regulations should be, and should have been by the District Court, afforded no discretion.

### iv.  The District Court's Erroneous Interpretation

The District Court interpreted 41 U.S.C. § 6707(e) to mean that "all such [fringe] benefits are categorically excluded from the FLSA's broader definition of 'regular rate'." JA 179. The District Court defends this interpretation by relying upon the alleged "cardinal rule against superfluity" which says, "if possible, effect shall be given to every clause and part of a statute." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932)). Indeed, the District Court states that reading § 6707(e) consistently with the FLSA's "regular rate" commands would render § 6707(e) "meaningless". JA 181 (quoting *Pulsifer v. United States*, 601 U.S. 124, 142 (2024)). The District Court's interpretation fails for myriad reasons.

14

### 1. 41 U.S.C. § 6707(e) Is Unambiguous and Reliance on Statutory Construction Tools Was Inappropriate

First, before ever interpreting the statute in question, the District Court should have halted its inquiry because 41 U.S.C. § 6707(e) is unambiguous:

> [C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. **When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete**.

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 253–254 (1992) (emphasis added); *accord Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) ("If the words of a statute are unambiguous, this first step of the interpretive inquiry is our last."). However, *nowhere in the District Court's opinion does it assert that § 6707(e) is ambiguous*. *See generally*, JA 169–184.

Indeed, the District Court's specific interpretation has subsequently been criticized. The California South District Court in December of last year articulated detailed support for the idea that § 6707(e) means what it says:

> Although the *Kuentz* court's analysis is thorough, the Court remains unpersuaded by the broader interpretation of Section 6707(e). If Congress had wanted the SCA to exclude "any" fringe benefits from the calculation of employees' overtime pay, then there would be no reason to include the final clause in the statute. Section 6707(e) would simply read: "In determining any overtime pay to

15

which a service employee is entitled under Federal law, the regular or basic hourly rate of pay of the service employee does not include any fringe benefit payments computed under this chapter[.]" That statutory text is sweeping and broad, and there is no doubt that "under federal law" encompasses the FLSA when Section 6707(e) is discussing the calculation of "the regular or basic hourly rate of pay".

Hence, the fact that Section 6707(e) includes the final clause shows Congress intended to limit the broad phrase "any fringe benefit payments" to those benefits "which are excluded from the definition of 'regular rate' under section 7(e) of [FLSA]." And it is this narrower reading of the statute that ultimately gives meaning to the final phrase of Section 6707(e) and prevents it from being merely surplusage. Consequently, after following this thread to the end, the Court finds Section 6707(e) is clear on its face. The regular rate under covered contracts does not include any fringe benefit payments that are excluded from FLSA's definition of "regular rate." And the Court declines to adopt regulatory interpretation that is at odds with the plain text.

*Miranda*, 2025 U.S. Dist. LEXIS 267673, at *34–36 (internal citations omitted).

Furthermore, after the District Court's decision, another case in the U.S. District Court of D.C. confirmed Appellants' reading of 41 U.S.C. § 6707(e) and found that it only excludes those payments set forth in section 7(e) of the FLSA. *Rivas v. United Am. Sec., LLC*, 2026 U.S. Dist. LEXIS 35584, at *29 (D.D.C. 2026) ("The Defendants are right that 41 U.S.C. § 6707(e) excludes certain 'fringe benefit payments' from being treated as part of the 'regular or basic hourly rate of pay' for the purpose of determining overtime pay. But the categories of fringe payments it

16

excludes **are those specified by 'section 7(e) of the [FLSA]' in other words, the same exclusions already applied by the DCMWA's definition of 'regular rate'**.") (emphasis added).

### 2. The District Court Misapplied the Cannon of Superfluity

Not only was 41 U.S.C. § 6707(e) unambiguous, but the District Court misapplied the superfluity rule of statutory construction. Under the rule of superfluity, '[a]statute should be construed so that effect is given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). The District Court found that Appellants' reading was allegedly superfluous and that, therefore, it should be read to create a new exclusion from the "regular rate". JA 181. However, as set out herein, there is no issue of superfluity because under Appellants' interpretation, 41 U.S.C. § 6707(e) does independent work and is not "meaningless". *Pulsifer*, 601 U.S. at 142.

Importantly, "like all other canons, [the canon against superfluity] must be applied with judgment and discretion, and with careful regard to context. It cannot always be dispositive because (as with most canons) the underlying proposition is not <u>invariably</u> true." Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u>, at 176 (2012). Indeed, "[t]he canon against superfluity is not a canon against verbosity. When a thought could have been expressed more

17

concisely, one does not always have to cast about for some additional meaning to the word or phrase that could have been dispensed with. This has always been understood." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 81 (2011) (Scalia, J., dissenting).

Furthermore, "the canon against superfluity is 'strongest when an interpretation would render superfluous another part of the same statutory scheme.'" *United States v. Montgomery,* 578 F. Supp. 3d 54, 73 (D.D.C. 2021) *citing Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013). "By the same token, the canon is less helpful in cases involving distinct statutory provisions enacted decades apart from one another." *Id.*

In the present case, the FLSA was passed into law in 1938 and the SCA passed into law in 1965; almost thirty years apart. Further, the FLSA and SCA are certainly not part of the same statutory scheme. They are two distinct statutes with distinct purposes. These facts caution against the cannon of superfluity. *See Montgomery*, 578 F. Supp. 3d at 73.

Furthermore, 41 U.S.C. § 6707(e)'s provision that fringe benefits must be treated consistently with the FLSA is not meaningless. Its purpose is to confirm that overtime compensation be treated consistently with the FLSA. The SCA defines "compensation" as a whole to mean "any payments or fringe benefits described in [41 U.S.C. § 6703]" 41 U.S.C. § 6701(1). However, the compensation described in

41 U.S.C. § 6703 may take one of two forms: (1) a *bona fide* fringe benefit; or (2) cash paid in lieu of a *bona fide* fringe benefit. *See* 29 C.F.R. § 4.177(a); *see also* 29 C.F.R. § 4.171. There must be some way to distinguish between these two forms of compensation as defined under the SCA. This is the job of § 6707(e). Section 6707(e) accomplishes this job by construing "compensation" consistently with the FLSA's defining federal legislation on "regular rate," 29 U.S.C. § 207(e). Because § 6707(e) does "independent work" it is not "meaningless" and the application of the cannon against surplusage is inappropriate. *Pulsifer*, 601 U.S. at 142.

Likewise, Appellants' interpretation of § 6707(e) is consistent with the "well-settled principle of statutory construction that where specific words precede or follow general words in an enumeration describing a particular subject, the general words are construed to embrace only objects similar in nature to those objects enumerated by the specific words." *Trinity Services, Inc. v. Marshall*, 593 F.2d 1250, 1258 (D.C. Cir. 1978) (collecting cases).

Here, the specific guides the general and not the inverse. The SCA sets out the universe of "any fringe benefit payment computed under" its strictures and asserts that, in the interests of consistency across the decades, only those payments excluded from the definition of "regular rate" under the FLSA may so be excluded under the SCA's "regular rate" for overtime premium calculations. *See* 41 U.S.C. § 6707(e). Accordingly, even if the SCA's overtime provision were ambiguous (which

19

it is not), the doctrines of statutory construction *confirm* rather than *contradict* Appellants' reading of the statute.

### 3. Appellants' Interpretation Is Consistent with the Remedial Purpose of the SCA and the FLSA

By way of footnote, the District Court highlights that adopting Appellant's reading of § 6707(e) would "penalize employers for exercising [the] option [of making equivalent or differential payments in cash] by subjecting cash payments to overtime premiums." JA 181. The District Court forgets the purpose of the SCA and FLSA as remedial statutes. *See Williams v. United States Dep't of Labor*, 697 F.2d 842, 844 (8th Cir. 1983) ("[E]xemptions from remedial legislation such as the Service Contract Act should be narrowly construed…"); *Menlo Service Corp. v. United States*, 765 F.2d 805, 809 (9th Cir. 1985) ("[O]ur statutory construction must be guided not only by the general stricture that remedial labor statutes like the Service Contract Act are to be liberally construed…, but also by the legislative intent that 'service contract' be construed broadly."); *Midwest Maintenance & Constr. Co. v. Vela*, 621 F.2d 1046, 1050 (10th Cir. 1980) ("[T]he [SCA], like the [FLSA], is remedial labor legislation which must be liberally construed.").

"[The] purpose [of the SCA] is to protect **employees** of government contractors." *Saavedra*, 700 F.2d at 497 (emphasis added). Besides, "the government is willing to increase contract price when contractors incur increased costs as a result

of complying with an increase in a wage determination applicable to their contract."

*Call Henry, Inc.*, 855 F.3d at 1351.

Accordingly, any argument that a statutory construction which penalizes employers should be avoided, especially in the face of remedial legislation favoring employees, should be rejected.

### 4. 41 U.S.C. § 6707(e) Does Not Control the Calculation of Overtime Under DC Law

Even assuming, *arguendo*, that the District Court's interpretation of 41 U.S.C § 6707(e) was correct, it would not control the calculation of Appellants' overtime compensation under the DCMWA. The SCA mandates that § 6707(e) only affects the "determine[ation of] any overtime pay to which a service employee is entitled **under Federal law**." It does not affect the calculation of overtime compensation determined under the DCMWA. Indeed, while the DCMWA incorporates the definition of "regular rate" under the FLSA, the determination of overtime pay that an employee is entitled to is solely conducted under the DCMWA. *See* D.C. Code § 32-1003(c).

Accordingly, even if the District Court's interpretation *were* correct, it should not have dismissed Appellants' DCMWA claim for overtime and that decision is due to be reversed.

21

**b. WAGE DETERMINATIONS ARE AUTOMATICALLY EFFECTIVE UPON THE EXERCISE OF AN OPTION ON A SCA CONTRACT OR THE ANNIVERSARY DATE OF THE CONTRACT**

The SCA mandates minimum wage levels and benefits which must be provided to the employees of contractors providing services to the United States on contracts of more than $2,500.00. *See* 41 U.S.C. §§ 6702(a), 6703(1)–(5). For applicable contracts, the SCA sets: (1) a minimum wage; (2) fringe benefits; (3) working conditions; (4) notice of terms of the contract to covered employees; (5) general schedule pay rates and prevailing rate systems. *See* 41 U.S.C. § 6703(1)–(5). The SCA contracts provide the applicable currently effective wage determinations, specifying the minimum wages and fringe benefits for service employees to be employed thereunder. 29 C.F.R. § 4.5(a). The DOL is required to determine the prevailing rates and fringe benefits in a locality, which become the minimum wage rates and fringe benefit rates for SCA contracts. *See* 41 U.S.C § 6703(1)–(2).

Further, the DOL routinely and periodically creates and updates specific wage rates in a specific locality, including the District of Columbia and the surrounding area. *See* 29 C.F.R. §§ 4.51, 4.55. The contracting agency must obtain a wage determination prior to: an invitation for bids, issuing a request for proposal, the commencement of negotiations, exercising an option or contract extension, the annual anniversary of a multi-year contract, or each biennial anniversary date of a multi-year contract. *See* 29 C.F.R. § 4.4(a)(1). The contracting agency may obtain a

22

wage determination by electronically submitting an e98 form, which describes the proposed contract and occupations expected to be employed, or by obtaining a wage determination from the WDOL web site[3]. *See id.* at 4.4(a)(2).

Updated wage determinations are "effective" upon its publication on the WDOL Web site *or* when a Federal agency receives a response from the Department of Labor to an e98 form. 29 C.F.R. 4.1a(h) ("A wage determination is effective upon its publication on the WDOL Web site or when a Federal agency receives a response from the [DOL] to an e98."). Explicitly, wage rates and fringe benefit rates determined by the DOL shall be "made applicable by contract to all service employees…under any contract subject to [the SCA] which is entered into thereafter and before such determination has been rendered obsolete by a withdrawal, modification, revision, or supersedure." 29 C.F.R. § 4.3(c).

Indeed, the Federal Acquisition Regulations ("FAR") require that the contracting officer for the respective agency insert a clause into every service contract confirming DOL wage determinations *automatically* apply to the contract. 48 C.F.R. § 22.1006(c)(1) *and* 48 C.F.R. § 52.222-43.

---

[3] "Wage Determinations OnLine (WDOL) means the Government Internet Web site for both Davis-Bacon Act and Service Contract Act wage determinations available at http://www.wdol.gov." 29 C.F.R. 4.1a(i). "Note: As of June 14, 2019 WDOL.gov has moved to https://sam.gov/content/home[.]" *See Wage and Hour Division, Dep't of Lab.*, https://www.dol.gov/agencies/whd/government-contracts/service-contracts/tools.

> **The wage determination**, issued under the Service Contract Labor Standards statute, (41 U.S.C. chapter 67), by the Administrator, Wage and Hour Division, U.S. Department of Labor, **current on the anniversary date of a multiple year contract or the beginning of each renewal option period, <u>shall</u> apply to this contract**. If no such determination has been made applicable to this contract, then the Federal minimum wage as established by section 6(a)(1) of the Fair Labor Standards Act of 1938, as amended, (29 U.S.C. 206) current on the anniversary date of a multiple year contract or the beginning of each renewal option period, shall apply to this contract.

48 C.F.R. § 52.222-43 (emphasis added).

This clause requires that current wage determinations issued by the DOL on the anniversary of a multi-year contract or the beginning of each renewal option period automatically apply to the contract. *Id.* Accordingly, Appellants were entitled to wage increases when these new wage determinations were published because they were owed the updated wage rates under federal law or by contract with the DOJ. *See* D.C. Code § 32-1301(3).

In a single footnote, the District Court notes that "wage determinations do not automatically take effect; it is the contracting agency's duty to update multi-year contracts with subsequent wage determinations." JA 174. In support, the District Court relies on 29 C.F.R. § 4.145 and a resource book from the DOL. *See Prevailing Wage Resource Book, SCA Wage Determinations, Dep't of Lab.,* https://perma.cc/DGG7-WTMV.

24

Neither 29 C.F.R. § 4.145 nor DOL Resource Book relied on by the District Court identify when updated wage determinations are effective on the employees of contractors. First, 29 C.F.R. § 4.145 concerns when service contracts are treated as wholly new contracts as opposed to mere modifications of existing contracts. It does not address when wage rates become effective. Furthermore, contrary to the District Court's interpretation, this section does not identify any "duty" on the agency to update the contract. Nor does it exempt contractors from paying wage rates owed. *See generally*, 29 C.F.R. § 4.145.

Second, the DOL Resource Book relied on by the District Court simply explains the process for obtaining a Wage Determination from the DOL in line with 29 C.F.R. § 4.4. *See generally*, *Prevailing Wage Resource Book, SCA Wage Determinations, Dep't of Lab.*, https://perma.cc/DGG7-WTMV. "The Prevailing Wage Resource Book is designed to provide an overview of the requirements of the Davis-Bacon and Related Acts (DBRA) and the Service Contract Act (SCA) for anyone who is interested in the administration and enforcement of these laws. The Prevailing Wage Resource Book is intended to provide practical guidance **rather than definitive legal advice**." *See Wage and Hour Division, Dep't of Lab.*, https://www.dol.gov/agencies/whd/government-contracts/prevailing-wage-resource-book. (emphasis added).

The resource book cited by the District Court provides as follows:

"The contracting agency is required to incorporate the applicable wage determination(s) into the contract. Thus, only those wage determinations inserted into the contract at award, or by modification, are applicable."

This section of the Resource Book is providing guidance on 29 C.F.R. § 4.4, which only deals with how to obtain a wage determination, not when wage determinations are effective. Importantly, the cited language from the resource book is not present in the regulation governing obtaining wage determinations. *See* 29 C.F.R. § 4.4. Accordingly, the language of the resource book is neither controlling nor should be considered persuasive.

The regulations concerning when a locality-based wage determination becomes effective is clear. It becomes effective when it is published on www.sam.gov. 29 C.F.R. 4.1a(h). This is confirmed by the FAR regulation and corresponding required contract clause mandating automatic application of current locality-based wage determinations. *See* 48 C.F.R. § 52.222-43. Accordingly, even if the District Court's reading of the Resource Book was correct, the language in the resource book would be contrary to the controlling regulations and contract clauses relevant in this matter.

Likewise, it is of no moment that Appellants signed a contract with Appellees that "contain integration clauses and no mention of subsequent wage determinations." JA 176. Explicitly, this is because "no provision of [the DCWPCL] shall **in any way** be contravened or set aside by private agreement." D.C. Code §

26

32-1305(a). At bottom, and as explained more thoroughly below, Appellants were *owed* these wage rates and are therefore entitled to be timely compensated with the same without regard to any contractual entitlement to the same.

Finally, Appellants have plainly pled that Appellees did not timely compensate them and other similarly situated individuals when subsequent wage determinations went into effect. *See* JA 17. At the Fed. R. Civ. P. 12(b)(6) stage, this well-pleaded fact should have been accepted as true. Even if the District Court was correct that wage determinations are only effective once inserted into a contract, it would be immaterial because Appellants pled that they were not timely paid the "proper required wage and cash in lieu of benefits rate when it went into effect." Accordingly, it was inappropriate for the District Court to dismiss Appellants' cause of action on the foregoing theory, and its decision must be reversed.

c. **THE DCWPCL PERMITS RECOVERY OF WAGES OWED PURSUANT TO DISTRICT OR FEDERAL LAW, EVEN IF THOSE WAGES ARE SET FORTH IN THE SCA**

Appellants allege that Appellees "failed and/or refused to implement required wage and cash in lieu of benefits increases when those increases went into effect resulting in the serial underpayment of wages promised, owed, and/or due for all hours worked." *See* JA 17. To be clear, Appellants are only seeking the collection of untimely and unpaid wages, as set out under public wage determinations issued by

the DOL. *See* JA 17. Appellants are not challenging their job classifications or the amounts set by the DOL. *See id.* at 30.

This is important because Appellants do not challenge whether the DOL has primary jurisdiction over issues of misclassification or the determination of prevailing wages under the SCA. Regarding misclassification, the Appellants do not challenge whether the DOL has the authority and control over determining what job duties correspond with what job classifications for the payment of prevail wage rates. *See generally*, 29 C.F.R. §§ 4.3, 4.51, 4.152 (establishing the prevailing wage rates will be set in a locality to correspond to specific job classifications with specific job duties). Regarding the determination of prevailing wages, the Appellants do not challenge whether the DOL has the authority and control over what rates actually prevail in a specific locality. *See generally*, 29 C.F.R. Part 4, Subpart B (identifying the various procedures for determining both locality-based wage determinations and collective bargaining agreement wage determinations). Here, no court or jury would be asked to invade the province of the DOL and determine what rates actually prevail in a locality nor determine whether Appellants were classified in the correct job classification.

Notwithstanding the same, the District Court indicates that even if the SCA wage determinations were automatically effective, Appellants would be not able to recover those wages under the DCWPCL because doing so would amount to "an

end-run around Congress's clear intent that the [DOL] interpret and enforce the SCA in the first instance." JA 175. The District Court explains that the SCA's remedial scheme allows the DOL or the head of a Federal agency – not private parties – to bring claims against Appellees. *See id.*

It is strange for the District Court to have reached for the end-run theory tool when Judge Friedrich previously held that there was no end-run issue foreclosing a worker's DCWPCL wage claim to recover wages promised, owed, and/or earned per wage determinations issued under the DBA. *See Garcia*, 324 F. Supp. 3d at 84. ("[E]mployee classification, along with the corresponding prevailing wage-setting, is the province of the Department of Labor….Garcia's claims, by contrast, would not short-circuit the DBA's administrative process or embroil the Court in legal determinations Congress intended the Department of Labor to resolve.").

In *Garcia,* Judge Friedrich first noted that the plaintiffs' claims could be based on the parties' *understanding* that the plaintiff was going to be paid at least the prevailing rates. However, the Court goes further and notes that "even if [the plaintiff's] complaint were construed to demand the DBA-mandated rates as a matter of law and irrespective of his agreement with his employers, there would be no impermissible end run, as there was no dispute over worker classification or corresponding rates. *Garcia*, 324 F. Supp. 3d at 85.

> [E]ven if Garcia's complaint were construed to demand the DBA-mandated rates as a matter of law and

irrespective of his agreement with his employers, **this case still would not present any *Danielsen* problem because—at this stage of the proceedings—there is no dispute over worker classification or corresponding rates**. Garcia alleges that both parties understood him to be hired "as a carpenter." He further alleges, and does not question, the hourly rates and fringe benefits that the Department has already set for carpenters. At this stage, **where the employers have not questioned Garcia's proper classification or the prevailing rates applicable to that classification, adjudicating Garcia's claims would not require any classification or wage-setting decisions of the kind Congress has reserved for the Department of Labor**.

*Id.* (emphasis added).

In the present case, the District Court did not credit Appellants' "understanding" that they would be paid prevailing wages because Appellants' employment agreements contained integration clauses and no mention of subsequent wage determinations.[4] *See* JA 175–176. However, The Court fails to explain why Appellants could not demand SCA rates "as a matter of law and irrespective" of any agreement with their employers.

### i. District of Columbia Law Provides a Broad Definition of Collectible Wages

The District Court opined that Appellants' claims under District of Columbia law do not provide for employee enforcement of agreements subject to the SCA. *See*

---

[4] As previously explained, an integration clause cannot set aside the provisions of the DCWPCL. D.C. Code § 32-1305(a).

JA 175. However, DCWPCL provides Appellants with a right of action to recover renumeration owed pursuant to federal law or by contract. Specifically, the statute explains that "wages" include "remuneration promised **or** owed" pursuant to contracts for employment, contracts between an employer and another entity, or pursuant to federal law - like the SCA. D.C. Code § 32-1301(3). These wages are plainly collectible under the statute. The mere fact that these wages are set by the SCA does not preempt Appellants or create an impermissible end run.

Importantly, the DCWPCL is a remedial statute and "must be interpreted broadly." *Hercules v. Logan Grill, Inc.*, 2020 D.C. Super. LEXIS 23, at *7 (D.C. Super. Ct. 2020) ("The DCWPCL is a remedial statute, and 'remedial statutes are liberally construed to suppress the evil and advance the remedy.'") (quoting *Hamilton v. Hojeij Branded Food, Inc.*, 41 A.3d 464, 474 (D.C. 2012)).

The DCWPCL "establishes requirements 'regarding how and when employers must pay their employees' wages [and] it establishes a framework for recovery against an employer who violates its provisions.'" *Ronaldson v. Nat'l Ass'n of Home Builders*, 2021 U.S. Dist. LEXIS 255215, at *8 (D.D.C. 2021) (quoting *Driscoll v. George Wash. Univ.*, 938 F. Supp. 2d 19, 22–23 (D.D.C. 2013)).

Furthermore, the DCWPCL defines "wages" broadly as "all monetary compensation after lawful deductions, owed by an employer, whether the amount is owed determined on a time, task, piece, commission, or other basis of calculation."

Under the DCWPCL, the term "wages" specifically includes a bonus, commissions, fringe benefits paid in cash, overtime premiums, and "[o]ther remuneration promised or owed: (i) [p]ursuant to a contract for employment, whether written or oral; (ii) [p]ursuant to a contract between an employer and another person or entity; or (iii) [p]ursuant to District or federal law. *See* D.C. Code § 32-1301(3).

Indeed, "the remuneration promised by an employer to an employee shall be presumed to be at least the amount required by federal law, including federal law requiring the payment of prevailing wages, or by District law." D.C. Code § 32-1305(b). This section was specifically added into the DCWPCL to incorporate federal prevailing wages into the statute. In 2011, the *Johnson v. Prospect Waterproofing Co.* opinion was issued explicitly stating that the plaintiff's claims there were an "impermissible end run around the [DBA]" and its alleged "exclusive administrative remedies". 813 F. Supp. 2d 4, 10 (D.D.C. 2011). Two years after *Johnson* was issued, in 2013 the District of Columbia Council passed – and Congress approved – the amendment to the DCWPCL which expanded the definition of recoverable wages to include remuneration promised or owed pursuant to federal law and added the presumption that remuneration promised by an employer to an employee shall include prevailing wages owed pursuant to federal law. This Court should credit Congress's permission and ratification of the 2013 amendment to the

32

DCWPCL *to create a private right of action for prevailing wages by incorporating the SCA into its statutory structure.*

There is a private right of action for underpayment of "wages", including prevailing wages, under District of Columbia law. As required by the DCWPCL, "[a]n employer shall pay all wages earned to his or her employees on regular paydays designated in advance by the employer and at least twice during each calendar month…". D.C. Code § 32-1302. Importantly, "a person aggrieved by a violation of [the DCWPCL or the DCMWA]…may bring a civil action in a court of competent jurisdiction against the employer or other person for violating [the same]…". D.C. Code § 32-1308(1)(A).

The statutory strictures of the DCWPCL are clear. The minimum wage rates proscribed by the DOL pursuant to the SCA, and the overtime which should be paid on those rates, are "wages" pursuant to the DCWPCL. Accordingly, Appellants are entitled to the timely compensation of the minimum wage rates proscribed by the DOL pursuant to the SCA.

### ii. The Lack of a Private Right of Action Under the SCA Does Not Stop Appellants' Meritorious Claims

The District Court cited *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*[5] and *C&E Servs.*[6] for the proposition that that even if Appellants were entitled to the updated wage rates, there would no available relief for Appellants. JA 174–175. The District Court reads *Danielsen* and *C&E Servs.* to mean that, in effect, the SCA operates a kind of preclusive effect of state law causes of action for remedying the underpayment of prevailing wages. *See id.*

This obscure argument has been made before. Indeed, courts have said that "disputes arising under the SCA must be resolved, in the first instance, by the statutory scheme for administrative relief set forth by Congress in the SCA and administered by the [DOL]." *C&E Servs., Inc. of Wash v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002). As the theory goes, to permit otherwise would be "an end-run around Congress's clear intent that the [DOL] interpret and enforce the SCA in the first instance." *Id.* However, this "end run theory" is vaguely

---

[5]  941 F.2d 1220, 1228 – 1229 (D.C. Cir. 1991).

[6]  310 F.3d 197, 201 (D.C. Cir. 2002).

supported by legal doctrine, if at all. Indeed, the arguments used in this Circuit seem to implicate the DOL's primary jurisdiction.

What is clear, as set out herein, is that this matter presents no primary jurisdiction problem nor does the so-called "end run theory" preclude it. Indeed, this Court should reject the "end run theory" in its entirety.

### 1. This Matter Presents No Primary Jurisdiction Problem

The District Court stated that it is the place of the DOL and not private parties to adjudicate disputes regarding the SCA. *See* JA 175. As noted earlier, the DOL only has primary jurisdiction over issues of misclassification and the determination of prevailing wages under the SCA. Primary jurisdiction refers to the "doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993), *superseded by statute on other grounds*, 49 U.S.C. § 10701(a), as amended. Here, the District Court suggests the doctrine of primary jurisdiction to support the "end run theory", arguing that only the DOL is empowered to hold Appellees liable. *See* JA 174. There is a legal framework to test this assumption.

"Although 'no fixed formula exists for applying the doctrine of primary jurisdiction,' some principles emerge from our precedents." *United States v. Philip Morris USA Inc.*, 686 F.3d 832, 837 (D.C. Cir. 2012) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). Courts in this Circuit generally examine the

following factors in determining whether an administrative agency has primary jurisdiction over a specific dispute:

> (1) whether the question at issue is within the conventional expertise of judges; (2) whether the question at issue lies particularly within the agency's discretion or requires the exercise of agency expertise; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Reeves v. 7-Eleven, Inc.*, 2024 U.S. Dist. LEXIS 133058, at *3 (D.D.C. 2024) (quoting *Himmelman v. MCI Commc'ns Corp.*, 104 F. Supp. 2d 1, 4 (D.D.C. 2000). However, on Appellants' claims herein, challenging the failure to timely pay them and other similarly situated individuals with prevailing wages, including correct overtime compensation, in a timely manner, there is no primary jurisdiction problem.

First, before applying the primary jurisdiction principles, courts which have grappled with the primary jurisdiction doctrine in relation to the SCA have determined that there are no primary jurisdiction issues. *See Longo v. Trojan Horse Ltd.*, 992 F. Supp. 2d 612, 616–617 (E.D.N.C. 2014) (analyzing the issue of primary jurisdiction in relation to a claim under ERISA relating to SCA fringe benefits, *i.e.*, 401(k) plan contributions); *see also Pantoja v. Zengel*, 2011 U.S. Dist. LEXIS 154845, at *11–14 (S.D. Fl. 2011) (same).

Following in the vein of *Danielsen*, courts in this Circuit have found that cases do, "not present any *Danielsen* problem [where]…there is no dispute over worker classifications or corresponding rates." *Garcia*, 324 F. Supp. 3d at 85; *see also*

36

*Rimaihi*, 2022 U.S. Dist. LEXIS 207937, at \*12–13. This is entirely appropriate because the DOL maintains verbose regulations regarding the setting of prevailing wage rates and the determination of classifications to which those prevailing wage rates are assigned. *See* 29 C.F.R. §§ 4.3, 4.51–4.56.

This distinction has been recognized by the Tenth and Sixth Circuits as well. *See IBEW, Local 113 v. T & H Servs.*, 8 F.4th 950, 962 (10th Cir. 2021) (quoting *United States ex rel. Wall v. Circle C*, 697 F.3d 345, 352–354 (6th Cir. 2012)) ("[T]he courts have drawn a dichotomy between a contractor's misrepresentation of [or here, failure to pay] wages and its misclassification of workers" and "[d]etermining whether the contractor has paid the wages it reported requires no agency expertise… But classification of workers is another matter, and requires deferral to the DOL."). This finding is in accordance with similar findings from the Fourth and Ninth Circuits. *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 431 (4th Cir. 2015) (plaintiff's allegations "that he was misclassified (that is, paid under the wrong Davis-Bacon Act wage schedule)…implicate primary jurisdiction"); *United States v. Dan Caputo Co.*, 152 F.3d 1060, 1062 (9th Cir. 1998) ("[T]he [DOL] should in the first instance determine how a particular type of work is classified for the purposes of wage determinations…[D]eferral to the [DOL] with respect to classification determinations is proper under the doctrine of primary jurisdiction.").

In applying the principles of primary jurisdiction to determine its application, it is clear that classifying groups of employees and determining what rates are prevailing in a locality is the province of the DOL. However, adjudicating the failure to timely pay wages is within the conventional experience of the courts. Indeed, the courts of this Circuit routinely adjudicate claims pursuant to the FLSA, DCMWA, and DCWPCL. Courts do not need to rely on agency expertise to determine whether a failure to timely pay wages has occurred.

Further, courts do not inconsistently rule on claims for failure to pay wages pursuant to the FLSA, DCMWA, and DCWPCL; there is a myriad of cases applying these statutes to various fact patterns to arrive at reasonably consistent results. *Reeves*, 2024 U.S. Dist. LEXIS 133058, at *3.

This distinction and the application of the primary jurisdiction principles explains why the *Danielsen* court dismissed the plaintiffs' claims there. As the lower *Danielsen* court explicitly found, the plaintiffs' claims would have required the District Court to take the role of the DOL. *See Danielsen v. Burnside-Ott Aviation Training Ctr.*, 746 F. Supp. 170, 177 (D.D.C. 1990) (identifying that "the Secretary of Labor has not yet determined the minimum wages required under the SCA for [applicable contracts] because there has been no final wage determination" and "the jury would in effect have to engage in a wage determination and retroactively reset any previous wage determinations established by the DOL"). The lower *Danielsen*

38

decision stated that the "DOL has the exclusive authority to issue wage determinations and has the primary jurisdiction to enforce violations of its wage determinations." *Id.* at 175.[7]

Unlike *Danielsen* or *C&E*, Appellants' DCWPCL simply seeks collection of, *inter alia*,[8] untimely paid wages which are "presumed to be at least the amount required by federal law, including federal law requiring the payment of prevailing wages, or by District law." D.C. Code § 32-1305(b). Indeed, Appellants simply seek what they are owed. Appellants do not seek, as the *Danielsen* plaintiffs did, to correct a "misdetermination of classification" under the SCA which is the province of the DOL. 941 F.2d at 1227 (highlighting "misdetermination of classification" as the core of the plaintiffs' complaint); *see e.g.*, 41 U.S.C. § 6703 (identifying determination of minimum wages to be paid and to which classes of service employees those rates shall be paid to as residing with the Secretary of Labor). Nor do the Appellants seek for the District Court to interpret and issue a declaratory judgment on whether the District of Columbia Water & Sewer Authority violated the rights of a "disappointed [contract] bidder". *C&E Servs.*, 310 F.3d at 198, 201. Appellants seek DCWPCL

---

[7] While Appellants agree with the former proposition, we fundamentally disagree with the latter.

[8] Appellants likewise seek the collection of the difference in the overtime premium compensation they were paid versus what they should have been paid pursuant to the DCWPCL.

damages for a violation of the DCWPCL and do not seek to infringe on the province of the DOL. Accordingly, there is no primary jurisdiction issue present in this matter.

## 2. There Is No End Run Present in This Matter

The District Court erred by determining that Appellants' claims amounted to an "end run" on Congress's administrative scheme under the DOL set out under the SCA. Even if they did, it would be no issue because the "end run theory" is not a legal theory but "a slogan, not an argument….[a]nd it is an erroneous slogan at that." *Grochowski v. Phoenix Constr., Ypsilon Constr. Corp.*, 318 F.3d 80, 90 (2d. Cir. 2003) (Lynch, J., dissenting). Further, the mere existence of the SCA does not disable, prevent, preempt, or otherwise stop Appellants' claims. Indeed, the DOL's administrative remedies do not prevent Appellants' meritorious claims which do not infringe on the DOL's primary jurisdiction.

"The issue…is not whether federal law itself provides private remedies, but whether it displaces remedies otherwise available under state law. The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012). Contrary to this distinction, "the end-run theory is built on the novel assumption that where Congress does not create a private right of action for violation of a federal law, no right of action may exist under state law, either." *Id.*

The often-cited case for this theory is the Second Circuit's resoundingly criticized *Grochowski*[9] decision which analyzed the DBA.[10] As pointed out by another judge of the District Court, "every other federal Court of Appeals to examine [the question of whether the lack of a cause of an action in a federal statute ipso facto bars recovery under state law where a private cause of action is available] has concluded that *Grochowski* is, in fact, itself 'really just an end-run around well-established preemption doctrine.'" *Rimaihi v. Avictecture, Inc.*, 2022 U.S. Dist. LEXIS 207937, at *8 (D.D.C. 2022) (collecting cases); *see also Garcia*, 324 F. Supp. 3d at 81 ("There is a difference between the lack of a private right of action and a congressional intent to foreclose other, extant rights of action.").

### a. The DOL's Administrative Enforcement Mechanism is not Appellants' Exclusive Administrative Remedy

The District Court cited to *Danielsen* and asserted that Appellants' claims were an "end run" around the administrative remedies set out by the DOL. *See* JA 174. *Danielsen* determined that the SCA's "statutory scheme for administrative relief" was the "exclusive remedy" for alleged violations of the SCA. 941 F.2d at

---

[9] 318 F.3d 80 (2d Cir. 2003).

[10] "[T]he [SCA] [is] a law largely parallel to the DBA, but for service rather than construction contracts." *Garcia v. Skanska USA Bldg., Inc.*, 324 F. Supp. 3d 76, 84 (D.D.C. 2018).

1226–1228 (quoting *Miscellaneous Service Workers, etc. v. Philco-Ford Corp.*, 661 F.2d 776 (9th Cir. 1981)). However, DOL's administrative enforcement mechanism is not Appellants' exclusive administrative remedy because the SCA does not explicitly say so and the statutory framework does not provide for a careful blend of administrative and judicial enforcement powers.

"[W]here a statute creates a right and provides a special remedy, that remedy is exclusive." *Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 103 (D.C. Cir. 1986) (citing *United States v. Babcock*, 250 U.S. 328, 331 (1919)). "In a variety of contexts, the Court has held that a precisely drawn, detailed statute pre-empts more general remedies." *Brown v. General Services Administration*, 425 U.S. 820, 834 (1976). One such context has been the 1972 amendment to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* ("Title VII").

Specifically, in *Brown*, the Supreme Court analyzed the "careful blend of administrative and judicial enforcement powers" of Title VII. 425 U.S. 829–832 (describing the structure of the judicial and administrative remedies available to a federal employee pursuant to the 1972 amendment). The Supreme Court identified that the "structure of the 1972 amendment itself fully confirms the conclusion that Congress intended it to be exclusive and pre-emptive." *Id.* at 829. For instance, the 1972 amendment established "complementary administrative and judicial enforcement mechanisms", including the right for an employee to be protected from

discrimination and file a civil action in a federal court with preconditions that the employee must first seek out administrative review by the Civil Service Commission. *Id.* at 829–833. Accordingly, "[t]he balance, completeness, and structural integrity of [Title VII] are inconsistent with the petitioner's contention that the judicial remedy afforded [therein] was designed merely to supplement other putative judicial relief."

At bottom, the 1972 amendment to Title VII created a right enforceable by the employee with a specific remedy and route for the same which included both judicial and administrative remedies. Accordingly, because Title VII struck this careful balance, the Supreme Court found that it precluded other causes of action which fell within its circumscribed space, including constitutional actions relating to federal employment discrimination. *See id.* at 833–834.

The lower *Danielsen* court noted, because the SCA "provide[d] for a careful blend of administrative and judicial enforcement powers", "Congress intended it to preempt other more general statutes." 746 F. Supp. at 176 (citations omitted). However, the SCA does not provide a "careful blend of administrative and judicial enforcement powers" as contemplated by the Supreme Court under *Brown*. 425 U.S. at 833. The administrative scheme under the SCA is dramatically different from the administrative and judicial remedies created by Congress for Title VII. Indeed, even in *MSW*, which the *Danielsen* court relied upon, the Ninth Circuit only refer to the

43

"exclusive administrative enforcement" in relation to displacing a private right of action *under the SCA itself*, not under other causes of action. 661 F.2d at 781–783 (highlighting that the other claims forwarded by the plaintiffs were not dismissed because of an exclusive administrative remedy). The Ninth Circuit did not state that any cause of action would be precluded because of the SCA and its administrative structure. *See id.*

In the SCA, there is simply no explicit statement that its administrative remedies are exclusive. *See generally*, 41 U.S.C. § 6705. Nor is such a statement in the SCA's enforcement mechanism. 41 U.S.C. § 6707. "Indeed, 'when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143–144 (2001). Not even *Grochowski* envisioned the administrative remedies contained in the DBA, the SCA's parallel, were exclusive. *Isufi v. Prometal Constr., Inc.*, 927 F. Supp. 2d 50, 58 ("[The Second Circuit] recognized, and did not disturb, its prior holding in *Chan*[ *v. City of New York*, 1 F.3d 96 (2nd Cir. 1993)) that the Act did not provide an exclusive cause of action.") (citing 318 F.3d at 85–86) ("The Court [in *Chan*] determined that…there is no statement that the administrative remedies are exclusive…Here, the plaintiffs did not bring a § 1983 action").

First, the SCA's explicit statutory scheme does not vest an employee of a contractor with any ability to remedy a violation of their rights. *See* 41 U.S.C. § 6705. While certainly, an employee *may* be the beneficiary of a finding of underpayment, they do not have a statutory right to seek adjudication of violations of the SCA for underpayment. *See id.* at § 6705(b).

Under the enforcement regulations, an employee may report a violation of the SCA, such as underpayment, to the Wage and Hour Divison of the DOL, but there is no obligation under the regulations for the DOL to investigate the alleged violations. *See* 29 C.F.R. § 4.191. Indeed, the DOL "**may** hold hearings" when a complaint is submitted, assumingly, regarding violation described in 41 U.S. § 6705. *See* 41 U.S.C. § 6507(b) (emphasis added); *see also* 41 U.S.C. § 6707(a) (identifying that the procedures of "Section[] 6507…govern the Secretary's authority to enforce [the SCA]…"). But such hearings are permissive and not mandatory upon a complaint, meaning employees of contractors may *never* receive administrative relief. Further, the employee of a contractor has no right to enforce their own claims either administratively or judicially unlike the 1972 amendment to Title VII. *Compare* 41 U.S.C. § 6707 *with* 42 U.S.C. § 2000e-16.

The SCA's administrative remedies are simply not so encompassing, either explicitly or implicitly, so as to create an exclusive remedy displacing other claims. Employees of contractors do not have rights to adjudicate their claims under the SCA

or its corresponding regulations. Indeed, employees of contractors are not guaranteed a hearing of any kind or an investigation even if they submit a complaint alleging violations of the SCA.

### b. Well-Established Preemption Doctrines Do Not Prevent Appellants' Claims

Though the District Court did not mention the term "preemption", Appellants set out herein that there can be no argument that any form of preemption applies to their claims. The SCA's mere existence does not and cannot stop Appellants' claims and the so-called "end run theory" is just a slogan to avoid grappling with preemption. Appellants do not assert, here or in the District Court below, that the SCA has a private right of action. To be sure, no form of preemption[11] can be raised under the SCA *because* it does not have a private right of action and the SCA does not explicitly say it displaces state law.

"Preemption is based on the Supremacy Clause….It specifies that federal law is supreme in case of a conflict with state law." *Murphy v. NCAA*, 584 U.S. 453, 477 (2018). Courts have looked at four types of preemption: conflict, express, field, and

---

[11] Indeed, "[s]everal courts have held that the SCA does not preempt suits for wages, fringe benefits, and other compensation predicated on state or local laws consistent with the SCA and its goals." *Naranjo v. Spectrum Security Services, Inc.*, 172 Cal. App. 4th 654, 665 (2nd Dist. Ct. App. 2009); *see Labor & Indus. v. Lanier Brugh*, 135 Wn. App. 808, 815–822 (App. Div. 1 2006); *see also Butler v. Fidelity Techs. Corp.*, 685 So. 2d 676, 678–680 (La. Ct. App. 1996); *see also Matthews v. Guest Servs., Inc.* 2025 U.S. Dist. LEXIS 145209, at *13–16 (E.D.N.C. 2025).

complete.[12] *See id.* "[A]ll of them work the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *Id.* "In all pre-emption cases…we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).

Importantly, "[b]y foreclosing a private right of action, Congress has done just the opposite of what is required for complete preemption to exist." *Id.* The same is true for the other forms of preemption. Indeed, the SCA simply does not occupy the field because of its lack of a private right of action:

> By foreclosing a private right of action, Congress has also foreclosed any successful argument of complete preemption. The failure of Congress to provide a private right of action shows that it does not intend SCA to occupy the whole field. Thus, there can be no argument of SCA preemption, whether "ordinary" or complete.

---

[12] "Complete preemption" "only applies in cases involving federal statutes that are intended by Congress to wholly displace state law, and, to date, the Supreme Court has found such complete preemption with respect to only three statutes." *Searcy v. Smith*, 111 F.4th 111, 115 (D.C. Cir. 2024); *see also District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 150 (D.C. Cir. 2023) (collecting cases identifying Section 301 of Labor Management Relations Act, Section 502(a) of the Employee Retirement Income Security Act, and Section 85 and 86 of the National Bank Act as the three instances of complete preemption).

*Inkrote v. Prot. Strategies, Inc.*, 2009 U.S. Dist. LEXIS 101070, at \*22 (2009) (N.D.W.V. 2009).

Nowhere in the SCA does it explicitly announce itself to displace any form of state law. *See generally*, 41 U.S.C. § 6705. Indeed, there is no such declaration in its specific enforcement mechanism. *See* 41 U.S.C. § 6707.

As other courts have found, because "[t]he SCA 'assumes the application of local laws benefitting workers, and adds other provisions to insure that benefits and protections for contract employees reach a certain minimum'….the SCA does not expressly preempt…state law claims or their claim for supplemental wages." *See Matthews*, 2025 U.S. Dist. LEXIS 145209, at \*14 (quoting *Diaz*, 93 F. Supp. 2d at 135–136); *see also Amaya v. Power Design, Inc.*, 833 F.3d 440, 445 (4th Cir. 2016) (reiterating that the SCA and FLSA "are not 'mutually exclusive' and that 'the provisions of all may apply so far as they are not in conflict.'").

Therefore, because the SCA does not have a private right of action, it assumes the concurrent application of local laws benefitting workers, and does not explicitly announce itself to preempt other law, there can be no finding of complete or "ordinary" preemption.

### 3. Therefore, the District Court's Reliance on the End Run Theory Must Be Rejected

As shown above, the "end run theory" is simply not supported. First, Appellants' claims do not seek to invade the province of the DOL by either

reclassifying federal contract employees or redetermine a prevailing wage rate. Second, DOL's administrative enforcement mechanism is not Appellants' exclusive administrative remedy because the SCA does not explicitly say so and the statutory framework does not provide for a careful blend of administrative and judicial enforcement powers. Finally, Appellants' claims are not preempted by the SCA *because* the SCA does not have a private right of action and it does not explicitly say it displaces state law.

"It would seem odd indeed for Congress to provide for employees of federal contractors to have fewer avenues of recovery as against the private contractors themselves simply because those contractors performed work for the federal or District of Columbia governments." *Rimaihi*, 2022 U.S. Dist. LEXIS 207937, at *11 (D.D.C. 2022). "The FLSA, the DCMWA, and the DCWPCL all create express rights of action for aggrieved employees. If Congress meant to revoke these in every [SCA]-covered contract, longstanding precedent required it to say so clearly." *Gracia*, 324 F. Supp. 3d 76, 82 (D.D.C. 2018) (substituting DBA for SCA). "Congress was well aware of the overlapping nature of federal and state labor laws." *Id.* at 82 – 83 (citing *Amaya v. Power Design, Inc.*, 833 F.3d 440, 445 (4th Cir. 2016)). The DCWPCL provides a remedy for Appellants' claims that they, and all similarly situated employees of Appellees, were not timely paid the prevailing

49

wages, including overtime wages, entitled to them, which they worked for, earned, and are owed. *See* D.C. Code § 32-1302.

Accordingly, whether or not Appellants' claims are premised on rates required by the SCA is of no issue. Appellants' DCWPCL claims for DCWPCL damages do not implicate an "end run" around Congress's intended remedy. Indeed, the "end run theory" in and of itself is wholly erroneous. The opinion of the District Court is due to be reversed, and this matter remanded for further proceedings.

## VII. Conclusion

In conclusion, the District Court erred on all fronts. The DCWPCL does provide a remedy for Appellants. Cash paid in lieu of statutorily required fringe benefits are not excludable from the regular rate under the FLSA, and § 6707(e) confirms, rather than contradicts, that fact. Wage determinations, which are publicly issued by the DOL, are automatically effective on a SCA contract upon the exercise of a contract option or the anniversary date of the contract.

Accordingly, this Court should reverse the holdings of the District Court and remand this matter for further proceedings in accordance with the same. Further, Appellants request any such other and further relief as this Honorable Court deems appropriate.

## VIII. Request for Oral Argument

The undersigned counsel for Appellants respectfully submits that oral argument in this case would aid the Court in fairly deciding this case because of the inherent complex legal issues that present complex legal questions. Accordingly, the undersigned requests that the Court grant the parties an oral argument for this matter.

Respectfully submitted,

/s/ Thomas Eiler
Thomas Eiler
Michael K. Amster
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
(301) 381-1327
teiler@zagfirm.com
mamster@zagfirm.com
Counsel for Plaintiffs-Appellants

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

    1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

   x   The brief contains  12,023    words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

      The brief uses a monospaced typeface and contains      lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

    2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

   x   The brief has been prepared in a proportionally spaced typeface using MS Word 2007  in a 14 point Times New Roman font or

      The brief has been prepared in a monospaced typeface using MS Word 2002  in a ___ characters per inch_____ font.

Date: 03/19/2026_____         /s/ Thomas Eiler
                                         Thomas Eiler