NOT YET SCHEDULED FOR ORAL ARGUMENT

# United States Court of Appeals for the District of Columbia Circuit

**No. 25-7171**

EMILIA KUENTZ; THOMAS CARPENTER, individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants,*

*v.*

CACI INTERNATIONAL INC.; CACI, INC. - FEDERAL; CACI, LLC - COMMERCIAL; ABC COMPANIES 1 - 25, (UNKNOWN CACI COMPANIES),

*Defendants-Appellees.*

METROPOLITAN WASHINGTON EMPLOYMENT LAWYERS ASSOCIATION,

*Amicus Curiae for Appellant.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:24-cv-02496-DLF, Dabney L. Friedrich, U.S. District Judge*

# REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

THOMAS EILER
MICHAEL K. AMSTER
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
(301) 381-1327
teiler@zagfirm.com
mamster@zagfirm.com

*Counsel for Plaintiffs-Appellants*

CP COUNSEL PRESS (800) 4-APPEAL • (393707)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

I. Summary of the Argument ........ 1

II. Argument ........ 2

- a. Dismissal of Appellants' Overtime Claims Should Be Reversed ........ 2
  - i. The SCA Cannot Control The Calculation of Overtime Under District of Columbia Law ........ 2
  - ii. The Plain Language of Section 6707(e) Supports Appellants' Federal Overtime Claims ........ 3
    - 1. Section 6707(e) is unambiguous ........ 3
    - 2. Appellants' reading is the best reading ........ 6
- b. The DCWPCL Permits Recovery of Rates Owed ........ 13
  - i. The SCA's Remedial Scheme is Not Comprehensive ........ 14
  - ii. The SCA does not Preempt any of Appellants' Claims ........ 19
    - 1. Field Preemption ........ 20
    - 2. Conflict Preemption ........ 23
  - iii. Appellants' DCWPCL Claims Rise Under Its Own Terms ........ 25
- c. Appellants Are Entitled to The Updated Wage Rates ........ 26

III. Conclusion ........ 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*American Federation of Government Employees, Local 1668 v. Dunn*,
561 F.2d 1310 (9th Cir. 1977)....................................................................10

*Arizona v. United States*,
567 U.S. 387 (2012) ....................................................................................21

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ............................................................................ 14, 15

*Astra USA, Inc. v. Santa Clara County*,
563 U.S. 110 (2011)......................................................................................25

*Brown v. General Services Administration*,
425 U.S. 820 (1976) ....................................................................................17

*Butler v. Fidelity Techs. Corp*,
685 So. 2d 676 (La. Ct. App. 1996) ...........................................................24

*California v. ARC America Corp.*,
490 U.S. 93 (1989) ......................................................................................23

*Call Henry, Inc. v. United States*,
855 F.3d 1348 (Fed. Cir. 2017)...................................................................10

*Chamber of Commerce of the United States v. Whiting*,
563 U.S. 582 (2011).............................................................................. 20, 23

*Chan v. City of New York*,
1 F.3d 96 (2nd Cir. 1993)............................................................................17

*City of MESA v. FERC*,
993 F.2d 888 (D.C. Cir. 1993) .......................................................................7

*CTS Corp. v. Dynamics Corp. of Am.*,
481 U.S. 69 (1987) ......................................................................................24

*Daielsen v. Burnside-Ott Aviation Training Ctr.*,
941 F.2d 1220 (D.C. Cir. 1991) ...................................................................15

*Diaz v. General Sec. Servs. Corp.*,
93 F. Supp. 2d 129 (D.P.R. 2000)....................................................... 21, 22

*District Lodge No. 166, International Ass'n of Machinists & Aerospace Workers v. TWA Services, Inc.*,
731 F.2d 711 .......... 25

*Fort Halifax Packing Co. v. Coyne*,
482 U.S. 1 (1987) .......... 21

*Frank Bros. v. Wis. DOT*,
409 F.3d 880 (7th Cir. 2005) .......... 22

*Gade v. National Solid Wastes Management Assn.*,
505 U.S. 88 (1992) .......... 20, 23

*Garcia v. Skanska USA Bldg., Inc.*,
324 F. Supp. 3d 76 (D.D.C. 2018) .......... 19

*Grochowski v. Phoenix Constr., Ypsilon Constr. Corp.*,
318 F.3d 80 (2nd Cir. 2003) .......... 18, 25

*Hillsborough v. Automated Medical Labs, Inc.*,
471 U.S. 707 (1985) .......... 22

*In re Trump*,
172 F.4th 44 (D.C. Cir. 2026) .......... 8-9

*Inkrote v. Prot. Strategies, Inc.*,
2009 U.S. Dist. LEXIS 101070, at *22 (N.D.W.V. 2009) .......... 22

*International Asso. of Machinists & Aerospace Workers v. Hodgson*,
515 F.2d 373 (D.C. Cir. 1975) .......... 25, 28

*Isufi v. Prometal Constr., Inc.*,
927 F. Supp. 2d 50 (E.D.N.Y. 2013) .......... 17-18

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*,
534 U.S. 124 (2001) .......... 24

*Kansas v. Garcia*,
589 U.S. 191 (2020) .......... 21

*Landstar Express Am., Inc. v. FMC*,
569 F.3d 493 (D.C. Cir. 2009) .......... 10

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 12, 13

*Masters v. Maryland Management Co.*,
493 F.2d 1329 (4th Cir. 1974)....24

*Matthews v. Guest Servs., Inc.*,
2025 U.S. Dist. LEXIS 145209 (E.D.N.C. 2025) ....21

*Metropolitan Life Ins. Co. v. Taylor*,
481 U.S. 58 (1987) ....20

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Calmmers Ass'n*,
453 U.S. 1 (1981) .... 14, 16, 17

*Miranda v. Centerra Servs. Int'l, Inc.*,
2025 U.S. Dist. LEXIS 267673 (S.D. Ca. 2025).... 5, 8, 13

*Miscellaneous Service Workers, etc. v. Philco-Ford Corp., WDL Div.*,
661 F.2d 776 (9th Cir. 1981)....18

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ....4

*Oneok, Inc. v. Learjet, Inc.*,
575 U.S. 373 (2015) ....20-21, 23

*Parker Drilling Mgmt. Servs. v. Newton*,
587 U.S. 601 (2019) ....4, 7

*Plusifer v. United States*,
601 U.S. 124 (2024) ....5

*Preiser v. Rodriguez*,
411 U.S. 475 (1973)....17

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) ....4

*Rice v. Norman Williams Co.*,
458 U.S. 654 (1982) ....23

*Rimaihi v. Avictecture, Inc.*,
2022 U.S. Dist. LEXIS 207937 (D.D.C. 2022)....26

*Roberts v. Sea-Land Services, Inc.*,
566 U.S. 93 (2012) ....4, 7

*Saavedra v. Donovan*,
700 F.2d 496 (9th Cir. 1983)....10

*Seemann v. Seemann*,
318 Neb. 643 (2025) ........ 8

*Sickle v. Torres Advanced Enter. Sols., LLC*,
884 F.3d 338 (D.C. Cir. 2018) ........ 19-20

*United States ex rel. Wall v. Circle C*,
697 F.3d 345 (6th Cir. 2012) ........ 16

*United States v. Cook*,
594 F.3d 883 (D.C. Cir. 2010) ........ 10

*Va. Office for Prot. & Advocacy v. Stewart*,
179 L. Ed. 2d 675, fn. 3 (2011) ........ 16

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547 (7th Cir. 2012) ........ 14, 26

**Statutes & Other Authorities:**

29 U.S.C. § 201 ........ 2

29 U.S.C. § 207(e) ........ 7, 9

33 U.S.C. § 1251 ........ 14

33 U.S.C. § 1401 ........ 14

41 U.S.C. § 6701 ........ 1, 19

41 U.S.C. § 6701(1) ........ 5

41 U.S.C. § 6703 ........ 5, 16, 27

41 U.S.C. § 6703(1) ........ 22

41 U.S.C. § 6703(2) ........ 11

41 U.S.C. § 6705 ........ 16

41 U.S.C. § 6707(a) ........ 16

41 U.S.C. § 6707(e) ........ 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 28

42 U.S.C. § 1396a(a)(30)(A) ........ 14, 15

42 U.S.C. § 1396c ........ 16

42 U.S.C. § 1983 ........ 17

29 C.F.R. § 4.171 ....................................................................................................5
29 C.F.R. § 4.177(a) ................................................................................................5
29 C.F.R. § 4.5(a)(3) ..............................................................................................28
29 C.F.R. § 4.55 ....................................................................................................10
29 C.F.R. § 5.5(a)(1)(i) ...........................................................................................27
48 C.F.R. § 52.222-43(c) .........................................................................................27
48 C.F.R. § 52.222-43(d)(2) .....................................................................................27
D.C. Code § 32-1001 ..................................................................................................2
D.C. Code § 32-1002(7) ..............................................................................................3
D.C. Code § 32-1301 ..................................................................................................1
D.C. Code § 32-1305(b) ............................................................................................26
Fed. R. Civ. P. 12(b)(6) ........................................................................................2, 19
H.R. 10238 ................................................................................................................9

## I. Summary of the Argument

Appellees claim that the plain and narrow reading of 41 U.S.C. § 6707(e) ("Section 6707(e)") is absurd and meaningless, clinging onto the District Court's erroneous interpretation of the same. They claim that the District of Columbia Wage Payment Collection Law, D.C. Code § 32-1301, *et seq.* ("DCWPCL") offers no remedy for under and untimely paid wage matters simply because the DCWPCL references federal law and public contracts. They claim that the Service Contract Act, 41 U.S.C. § 6701, *et seq.* ("SCA") is so uniquely comprehensive that it is the exclusive remedy for any claim related to such matters. They claim, for the first time, that the SCA preempts any state law action for underpayment of wages related to the SCA.

Appellees fail to meaningfully oppose Appellants arguments in favor of reversal. Section 6707(e) is plain on its face. Even if it were not, the narrow interpretation found by courts across the country time and again, both before and since the District Court's opinion, is the best and most logical reading.

Additionally, the DCWPCL is not impliedly preempted. The SCA's administrative remedies are not comprehensive or exclusive. A comparison to the other statutes analyzed in Appellees' cited authorities confirms this. Congress expressly assumed the application of local laws as evidenced by the statutory structure of the SCA and could not, therefore, have assumed it would occupy the

field. Further, the remedies and goals of the DCWPCL and SCA are consistent and do not conflict in any way.

Finally, the District Court's finding that SCA wage determinations are not automatically effective was error. Indeed, Appellants clearly alleged that the wage rate increases were untimely. Accordingly, timeliness findings were inappropriate at the Fed. R. Civ. P. 12(b)(6) stage.

Therefore, and as explained further herein, the holdings of the District Court are due to be reversed.

## II. Argument

### a. Dismissal of Appellants' Overtime Claims Should Be Reversed

#### i. The SCA Cannot Control The Calculation of Overtime Under District of Columbia Law

Appellees argue that, because the District of Columbia Minimum Wage Act, D.C. Code § 32-1001, *et seq.* ("DCMWA") incorporates the definition of "regular rate," Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), Section 6707(e) control's the DCMWA's overtime calculation. They attempt to recast Appellants' argument that Section 6707(e) does not control the DCMWA as a "last ditch" effort. ARB at 40. However, there is no justification for dismissal of Appellants' DCMWA claims for unpaid overtime compensation because Section 6707(e) does not apply to state overtime calculations. Appellees are correct that "[n]o matter which particular

***federal*** overtime law requiring overtime is implicated, Section 6707(e) expressly applies." ARB at 18 (emphasis added).

The DCMWA defines "regular rate" almost synonymously with the FLSA but excludes certain exceptions. D.C. Code § 32-1002(7). The DCMWA does not reference or include Section 6707(e). *See id.* Section 6707(e) only "determines any overtime pay to which a service employee is entitled **under Federal law**." (emphasis added). The fact that the DCMWA borrows terms and definitions from the FLSA does not matter because it does not borrow Section 6707(e). The DCMWA calculates overtime compensation under its own strictures and borrows terminology to do so.

Appellees argue the District Court's statement that the DCMWA incorporates the FLSA's "regular rate" definition is somehow dispositive of this issue. ARB at 40 (citing JA180–181). However, Appellees do not even attempt to address the textual fact that Section 6707(e) only applies to overtime pay entitled to employees "under Federal law".

Accordingly, the District Court's dismissal of Appellants' claims under the DCMWA is due to be reversed.

### ii. The Plain Language of Section 6707(e) Supports Appellants' Federal Overtime Claims

#### 1. Section 6707(e) is unambiguous

Appellees argue that Section 6707(e) is ambiguous, even though numerous other courts across the country before and since the District Court's decision have

found otherwise. No amount of semantic gamesmanship can detract from the clear meaning found time and again. Appellees breakdown of a single sentence is simply an exercise in obfuscation. The single sentence of Section 6707(e) "must be read in [its] context and with a view to [its] place in the overall statutory scheme." *Parker Drilling Mgmt. Servs. v. Newton*, 587 U.S. 601, 608 (2019) (quoting *Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 101 (2012)).

Section 6707(e) is not ambiguous because, as Appellants articulated in their Opening Brief, the specific guides the general and not the inverse. AOB at 19. "[I]t is a commonplace of statutory construction that the specific governs the general." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). The "which" clause narrows the general universe described in Section 6707(e)'s fringe benefit prohibition. As set forth in *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, "[t]he general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission." 566 U.S. 639, 645 (2012). "To eliminate the contradiction, the specific provision is construed as an exception to the general one." *Id.*

Here, the general/specific cannon precisely dictates the reading of the last portion of Section 6707(e). The middle portion of Section 6707(e) generally prohibits fringe benefit payments from the regular or basic hourly rate, but the final portion of Section 6707(e) narrows the scope of that general prohibition. This yields

the clear result reached by numerous other courts across the country that, "[t]he regular rate under covered contracts does not include any fringe benefit payments that are excluded from FLSA's definition of 'regular rate'." *Miranda v. Centerra Servs. Int'l, Inc.*, 2025 U.S. Dist. LEXIS 267673, at *35–36 (S.D. Ca. 2025).

Further, Appellants' and the majority of courts' interpretation of Section 6707(e) is not superfluous. First, as described above, no portion of Section 6707(e) is rendered "meaningless" because its final clause does the independent work of narrowing the general universe of excludable fringe benefits. *See Plusifer v. United States*, 601 U.S. 124, 143 (2024).

Further, because fringe benefit payments under the SCA take two forms, either a *bona fide* fringe benefit or a cash equivalent paid in lieu of the same, there must be a way to differentiate between them for the purposes of overtime. *See* 41 U.S.C. § 6703; *see also* 29 C.F.R. §§ 4.171 and 4.177(a). The SCA's term "compensation" lumps these two forms of payment together. 41 U.S.C. § 6701(1). Whereas Section 6707(e) discriminates against the two forms of compensation for the purposes of overtime calculation.

Accordingly, the plain language of Section 6707(e) is natural, plain, and unambiguous as supported by its linguistic structure and canons of construction.

### 2. Appellants' reading is the best reading

Even if Section 6707(e) were ambiguous, Appellants' reading is the best reading. The District Court found that "Congress wanted to make clear that the SCA's regular-rate proviso is not swallowed by the FLSA's longstanding definition of 'regular rate'." JA at 181. Appellees claim that the final clause of Section 6707(e) "ensures that, for fringe benefits excluded under the FLSA's 'regular rate,' a corresponding fringe benefit payment under the [SCA] is also excluded." ARB at 19. Appellees further argue that the nonrestrictive interpretation is not superfluous because it does "independent work" by "ensur[ing] that [] state overtime laws also exclude fringe benefit payments." ARB at 20.

Appellees argue that their reading is supported by specific isolated words in Section 6707(e), including its subsection title. ARB At 24–28. Appellees argue that the plain and narrow interpretation would "do nothing" and merely tell employers to calculate overtime pay consistent with the FLSA, rendering it superfluous. ARB at 28. Appellees suggest that Department of Labor ("DOL") regulations which are contrary to the plain and narrow interpretation must control the interpretation of Section 6707(e). ARB at 30–32. Appellees even support the DOL regulations with selective quotes from legislative history. ARB at 33. Appellees argue that the plain and narrow interpretation creates absurd results. ARB at 34–36. Finally, Appellees

attack, in passing, the myriad courts supporting the plain and narrow interpretation. ARB at 37–40.

This Court should not be bogged down in Appellees' semantic gamesmanship. Appellants need not argue that the word "which" always and inherently introduces restrictive clauses. ARB at 22. Appellants need not argue whether "any" denotes expansiveness or narrowness. ARB at 26–27. Appellants need not attempt to derive meaning from a subsection title. ARB at 27–28. Instead, Appellants must analyze Section 6707(e) so that its words are read in context with a view of their place in the statutory scheme. *Newton*, 587 U.S. at 608 (quoting *Roberts*, 566 U.S. at 101). "Naturally, we try not to interpret statutory language by plucking a single word out of context and placing it under a microscope." *City of MESA v. FERC*, 993 F.2d 888, 893 (D.C. Cir. 1993).

The general/specific canon cautions against both the District Court's and Appellees' interpretations. The FLSA's definition of "regular rate" is, by far, the more comprehensive and detailed statute whereas Section 6707(e) is exceedingly general. *Compare* 29 U.S.C. § 207(e) *with* 41 U.S.C. § 6707(e). This canon of statutory construction suggests Congress included the final "which" clause of Section 6707(e) to cement the FLSA's specific definition over the SCA's general prohibition on exclusion of fringe benefit payments.

Further, Appellees' arguments are unsupported. Section 6707(e) neither discusses "corresponding fringe benefit payments" or an equivocation between fringe benefits paid in kind or in cash. ARB at 19–20. Nor does Section 6707(e) reference state law in any way. ARB at 20. Appellees deflect when calling the plain and narrow interpretation of Section 6707(e) "radical" when they forward an entirely new, unsupported interpretation adopted by only the District Court. ARB at 20.

As explained prior, the plain and narrow interpretation is not superfluous and gives meaning to every word of Section 6707(e). However, the nonrestrictive interpretation forwarded by Appellees' is superfluous as shown in Appellants' Opening Brief. AOB at 15–16 (quoting *Miranda*, 2025 U.S. Dist. LEXIS 267673, at *34–36). Appellees' own cited authority from the Supreme Court of Nebraska explains that nonrestrictive clauses can "be removed from the sentence without 'changing the essential meaning of the sentence.'" *Seemann v. Seemann*, 318 Neb. 643, 654 (2025) (quoting Bryan A. Garner, The Redbook: A Manual on Legal Style § 10.20 at 189 (3d ed. 2013)). In this sense, even if Appellees semantic examination of the word "which" were given weight, such an interpretation would *support* Appellants' interpretation, because a nonrestrictive interpretation is superfluous.

Notwithstanding the general/specific canon or rules against superfluity, courts "[r]atifying an interpretation that would frustrate the instrument's purpose is not [] a permitted practice in statutory interpretation." *In re Trump*, 172 F.4th 44, 106 (D.C.

Cir. 2026) (collecting authorities). Charles Donahue, then-Solicitor for the DOL explained on August 5, 1965, that consistency with the FLSA is the purpose of Section 6707(e):

> H.R. 10238…provides…**that when overtime is calculated under that statute for purposes of the employees covered by this bill, then it would omit from the regular rate of pay, the basic hourly wage rate, any of the fringe benefit payments of the types specified in the [FLSA] as being omitted from the regular rate of pay for overtime purposes under the [FLSA]**. This is for the purpose of **underlining and emphasizing the need for consistency in administration and in presentation of overtime under all of these statutes in a standard way**, so that it would be easier for employers to understand, and easier for agencies to know about; and easier for the [DOL] to administer.

*Service Contract Act of 1965: Hearing on H.R. 10238 Before the Special Subcomm. on Labor of the H.R. Comm. on Education and Labor*, 89th Cong. 1, 8 (1965) (emphasis added). Appellees' selective quotation of Mr. Donahue in their Footnote 8 is inappropriate. Indeed, he went on to express that "[The SCA] specifically provides against the counting of the normal fringe benefits **where they would not be counted as part of the regular rate of pay for overtime purposes under the [FLSA]. I believe it is section [207(e)] of the [FLSA] which provides that, so that there would be a consistency of application as to overtime of all three of these statutes**." *Service Contract Act of 1965: Hearing on H.R. 10238 Before the Subcomm. on Labor of the S. Comm. on Labor and Public Welfare*, 89th

Cong. 1, 18 (1965) (emphasis added). Consistency between the FLSA and SCA is the goal of Section 6707(e) and Appellees' interpretation is at odds with that stated goal.

Appellees support their absurdity argument using the supposed purpose of the SCA. They argue its purpose is to equalize wage rates among government service contractors "so none will be placed at a competitive disadvantage." ARB at 35 (quoting 29 C.F.R. § 4.55). However, "[The SCA's] purpose is to protect employees of government contractors." *Saavedra v. Donovan*, 700 F.2d 496, 497 (9th Cir. 1983). "Before the [SCA], the federal government had been 'subsidizing' substandard levels of compensation by awarding contracts to those who were able to bid low by paying less." *Id.* (citing *American Federation of Government Employees, Local 1668 v. Dunn*, 561 F.2d 1310, 1312 (9th Cir. 1977)). Indeed, "[o]ne of the principal policy implications of the SCA is that the U.S. government…is willing to pay a premium for services in return for its contractor's obligation to compensate service employees adequately and fairly." *Call Henry, Inc. v. United States*, 855 F.3d 1348, 1351 (Fed. Cir. 2017).

With the policy purpose of the SCA in clear view, it is apparent that Appellees fail to meet the "high threshold" of showing absurdity. *United States v. Cook*, 594 F.3d 883, 891 (D.C. Cir. 2010) (quoting *Landstar Express Am., Inc. v. FMC*, 569 F.3d 493, 498–499 (D.C. Cir. 2009)). Appellees' hypothetical mistakes two

important facts. ARB at 34–35. First, Employee A and Employee B are not the same: they are paid two different regular rates of pay by virtue of the employer's decision to furnish either *bona fide* fringe benefits or cash equivalents. There is the clear difference between these two employees. Indeed, the whole hypothetical is misplaced because Appellees argue that the SCA is focused "on equality" between workers as opposed to benefitting workers. ARB at 35.

Second, Appellees argue that the plain and narrow reading of Section 6707(e) incentivizes workers to reject the fringe benefits required under the SCA for their cash equivalents. ARB at 35. This statement seems to forget the reality of what is being traded for an additional $5.55 per hour for up to 40 hours per week.[1] In exchange for this additional amount, a service worker gives up fringe benefits which "shall include medical or hospital care, pension on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, unemployment benefits, life insurance, disability and sickness insurance, accident insurance, vacation and holiday pay, costs of apprenticeship or other similar programs and other bona fide fringe benefits not otherwise required by Federal, State, or local law to be provided by the contractor or subcontractor." 41 U.S.C. § 6703(2). While it is unlikely that a worker is

[1] Wage Determination #2015-4281 Rev. 37 publicly accessible at https://sam.gov/wage-determination/2015-4281/37 (last accessed on May 28, 2026).

incentivized to give up these rights, it is likely that an employer would be incentivized to pay the cash equivalent rather than construct an internal benefit plan or join one with a third-party along with its concomitant obligations and expenses.

Appellees' claim that the DOL regulations should control the interpretation of Section 6707(e) is inappropriate. The DOL regulations, issued as "interpretative rules", exceed the DOL's authority. ARB at 30. Indeed, "legal interpretation…has been, 'emphatically,' 'the province and duty of the judicial department' for at least 221 years." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). As explained above, the regulations at issue are contrary to the purpose of consistency articulated by Mr. Donahue to Congress in 1965. Further, the regulations at issue are contrary to the plain and narrow interpretation of Section 6707(e) as found by numerous courts across the country. AOB at 12 (collecting cases declining to adopt the DOL regulations). This Court should join every other court to examine the DOL regulations at issue in this matter.

Appellees attack the other courts that have found Section 6707(e) should be read plainly and narrowly. ARB at 37–40. Their arguments lack merit. First, the fact that numerous courts found that Section 6707(e) was plain on its face supports rather than, as inexplicably argued by Appellees, detracts from adopting the plain and narrow interpretation. ARB at 37–38.

Second, Appellees seemingly concede that the "legislative history…expresses a desire that the 'regular rate' be calculated consistently under both the FLSA and the [SCA]." ARB at 38. However, Appellees then relate to pure abstraction to argue that their interpretation is consistent with the FLSA. *Id.* This bold-faced position contradicts their argument that they want Section 6707(e) to mean that overtime for federal contracts is calculated inconsistent with the FLSA. ARB at 19–20.

Finally, Appellees simply state that the holding in *Miranda* is "erroneous[]" without analysis. ARB at 39. Instead, Appellees simply reiterate that their interpretation is "meaningful". *Id.* Again, Appellees interpretation that the "which" clause is meant to engraft an additional exclusion from the FLSA's regular rate violates, *inter alia*, the general/specific cannon. *See supra* 4–5, 7–8. Just as well, Section 6707(e) simply does not reference state law in any way and therefore Appellees' assignment of meaning on state law grounds fails.

**b. The DCWPCL Permits Recovery of Rates Owed**

Appellants' claims based upon rights provided under the DCWPCL seeking a remedy pursuant to the DCWPCL should not have been dismissed. Appellees miss the point of Appellants' claims. "The issue…is not whether federal law itself provides private remedies, but whether it displaces remedies otherwise available under state law. The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or

incorporates some element of the federal law." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012).

**i. The SCA's Remedial Scheme is Not Comprehensive**

Appellees first argue that Congress's creation of an administrative scheme enforced by the DOL restricts covered disputes in totality. ARB at 41. To support their position, Appellees reference 42 U.S.C. § 1396a(a)(30)(A) ("Section 30"), as discussed in *Armstrong v. Exceptional Child Ctr., Inc.*[2], and the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* ("FWPCA") and Marine Protection, Research, and Sanctuaries Act of 1972, 33 U.S.C. § 1401, *et seq.* ("MPRSA"), discussed in *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Calmmers Ass'n*[3], to support their contention that the administrative scheme in the SCA is comprehensive. ARB at 41, 53.

These acts are dramatically different than the administrative scheme set out in the SCA, as it relates to Appellants' claims, because: (1) Appellants' claims are premised on facts which do not require special administrative knowledge or judgment; and (2) the SCA does not have a private right of action for employees.

Appellees argue that "[t]his Court has long held" that the SCA is so comprehensive that the Act's remedies were intended to be exclusive." ARB at 51.

---

[2] 575 U.S. 320, 328 (2015).

[3] 453 U.S. 1, 20 (1981).

However, the *Danielsen* court mentioned by Appellees explains that the SCA's "statutory scheme for administrative relief" left "no room for a RICO action **on the present allegations**". *Daielsen v. Burnside-Ott Aviation Training Ctr.*, 941 F.2d 1220, 1226 (D.C. Cir. 1991) (emphasis added). Appellants' DCWPCL claims have nothing to do with a "misdetermination of classification" under the SCA which the *Danielsen* court determined was subject to the SCA's exclusive remedial provisions. *Id.* at 1227. Appellees want to expand the scope of *Danielsen* to state that no claim, including those premised on state law, may be permitted if it implies a relationship to the SCA. ARB at 41–47. A review of the acts cited by Appellees contradicts their arguments.

Uniquely, Section 30 presents mandates which the Supreme Court called "judicial[ly] unadministrable". *Armstrong*, 575 U.S. at 328. This is because "[i]t is difficult to imagine a requirement broader and less specific that §30(A)'s mandate that state plans provide for payments that are 'consistent with efficiency, economy, and quality of care,' all the while 'safeguard[ing] against unnecessary utilization of…care and services.'" *Id.* (quoting 42 U.S.C. § 1396a(a)(30)(A)). There, the Supreme Court found exclusivity because enforcement was placed upon an administrative agency and the "judgment-laden standard" of the agency was "judicial[ly] unadminsitrable". *Id.*

In contrast to Section 30, there is no complexity associated with seeking unpaid wages under the DCWPCL. AOB at 35–39. Indeed, determining a failure to pay wages "requires no agency expertise….But classification of workers…requires deferral to the DOL." *United States ex rel. Wall v. Circle C*, 697 F.3d 345, 352–354 (6th Cir. 2012). Those whose rights are implicated by Section 30 are *guaranteed* notice and an opportunity for a hearing before an adjudication of their rights; something not present under the SCA. *Compare* 41 U.S.C. § 6703 *with* 42 U.S.C. § 1396c. Further, just because the DOL "can exercise oversight of a federal spending program and even withhold or withdraw funds" that "does not demonstrate…Congress['s] intent not to provide [] more complete and more immediate relief' that would otherwise be available…" *Va. Office for Prot. & Advocacy v. Stewart*, 179 L. Ed. 2d 675, fn. 3 (2011).

In *Middlesex Cnty. Sewerage Auth.*, the Supreme Court explained that the FWPCA and MPRSA contained "unusually elaborate enforcement provisions", including authorization for suits by the government and private citizens. *Id.* at 13–14. In contrast with these acts, the SCA provides no employee enforcement mechanism, either in an administrative forum or in a court, for instances of wage theft. *See* 41 U.S.C. §§ 6705, 6707(a). Instead, employees may simply be the beneficiary of any determined underpayment.

Appellees argue that Appellants underplay the breadth of the SCA's administrative scheme. ARB at 52. But Appellants only identify that the administrative scheme contained in the SCA is nothing like the "unusually elaborate enforcement provisions" of the FWPCA and MPRSA nor the "careful blend of administrative and judicial enforcement powers" of Title VII. *Middlesex Cnty. Sewerage Auth.*, 453 U.S. at 20; *see also Brown v. General Services Administration*, 425 U.S. 820, 829–832 (1976). Indeed, the administrative scheme is simple and without comprehensive remedy for employees. AOB at 41–45.

Importantly, the enforcement mechanisms of the FPWCA, MPRSA, and Title VII have been found to leave no room for claims under 42 U.S.C. § 1983. *See Middlesex Cnty. Sewerage Auth.*, 453 U.S. at 20 ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983."); *see also Brown*, 425 U.S. at 834 (noting the proposition that even though 42 U.S.C. § 1983 was "by its terms, literally applicable [to a prisoner case]" the only appropriate remedy was "under habeas corpus, the 'more specific act'") (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 488–490 (1973)).

This is unlike the similar DBA where "[the Second Circuit] recognized, and did not disturb, its prior holding in *Chan*[ *v. City of New York*, 1 F.3d 96 (2nd Cir. 1993)) that the Act did not provide an exclusive cause of action." *Isufi v. Prometal*

*Constr., Inc.*, 927 F. Supp. 2d 50, 58 (E.D.N.Y. 2013) (citing *Grochowski v. Phoenix Constr., Ypsilon Constr. Corp.*, 318 F.3d 80, 85–86 (2nd Cir. 2003)). Further, the Ninth Circuit, in analyzing the SCA, did not dismiss the plaintiff's wage claim because of an exclusive remedy argument, but because it failed to state a claim. *Miscellaneous Service Workers, etc. v. Philco-Ford Corp., WDL Div.*, 661 F.2d 776, 782–783 (9th Cir. 1981).

Since the SCA is not sufficiently comprehensive to displace other remedies, it does not matter that the SCA gives the government power to enforce its wage-and-benefit provisions. ARB at 49. This is because other statutes may provide a remedy for violation of certain provisions of the SCA. However, Appellants case presents a different question: whether the SCA, by some operation of law, displaces a claim under the DCWPCL just because it incorporates some of its terms without enforcing its provisions.

The SCA may provide an exclusive remedy for issues relating to classification which may be judicially unadminsitrable (as hinted at by *Danielsen*[4]) and within the province of the DOL. However, this approach should not be broadened to encompass the DCWPCL's own rights and remedies. It is odd that Appellees argue that the remedy found in the SCA is exclusive, ARB at 47–49, but likewise argue that Judge

---

[4] 941 F.2d at 12227.

Friedrich's opinion in *Garcia v. Skanska USA Bldg., Inc.*[5] is valid, ARB at 46. In *Garcia*, the court explicitly found that a DCWPCL arising under its own terms could proceed either because they were based on an agreement between the employer and the employee or "even if" based on "DBA-mandated rates as a matter of law and irrespective of his agreement with his employers" there would be no "*Danielsen* problem because—at [the 12(b)(6)] stage[]—there is no dispute over worker classifications or corresponding rates." 324 F. Supp. 3d at 84–85.

Appellants only seek to enforce DCWPCL rights to receive DCWPCL remedies. The SCA's remedies do not preclude that claim.

#### ii. The SCA does not Preempt any of Appellants' Claims

Appellees understand that they must rely on implied preemption because there is nothing in the SCA that explicitly[6] says it displaces the rights of states. Appellees' arguments related to field and conflict preemption are largely tied together. ARB at 54–55. Further, it is Appellees' burden to show any such preemption is applicable, as "[p]reemption ordinarily is an affirmative defense…". *Sickle v. Torres Advanced*

---

[5] 324 F. Supp. 3d 76 (D.D.C. 2018).

[6] Appellees contend that service contractor employees are "instructed" by Congress to use only the administrative remedies in the SCA. ARB at 55. However, the SCA is devoid of *any* instruction, either express or implied. *See generally*, 41 U.S.C § 6701, *et seq.*

*Enter. Sols., LLC*, 884 F.3d 338, 345 (D.C. Cir. 2018) (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)).

Importantly, "[i]mplied preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives'; such an endeavor 'would undercut the principle that it is Congress rather than the courts the preempts state law.'" *Chamber of Commerce of the United States v. Whiting*, 563 U.S. 582, 607 (2011) (quoting *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 111 (1992) (Kennedy, J. concurring in part and concurring in judgment)).

As discussed below, Appellees' arguments concerning field and conflict preemption fall apart under scrutiny.

**1. Field Preemption**

Appellees argue that field preemption applies because of the "pervasive" framework of the SCA and because state law should be permitted to resolve cases concerned with the rights and obligations of the United States.

First, as explained above, the SCA's provisions are not exceedingly comprehensive and further Appellees have failed to identify what field Congress intended to occupy by its passage. Field preemption applies where "Congress may have intended 'to foreclose any state regulation in the area,' irrespective of whether state law is consistent or inconsistent with 'federal standards.'" *Oneok, Inc. v.*

*Learjet, Inc.*, 575 U.S. 373, 377 (2015) (quoting *Arizona v. United States*, 567 U.S. 387, 401 (2012)). Importantly, "[i]n order to determine whether Congress has implicitly ousted the States from regulating in a particular field, we must first identify the field in which this is said to have occurred." *Kansas v. Garcia*, 589 U.S. 191, 208 (2020). All Appellees claim is that the SCA is so pervasive and comprehensive, it manifests a preemption. ARB at 54. Appellees have not identified any field that Congress intended to occupy.

Further, Appellees fail to grapple with the fact that "[t]he SCA 'assumes the application of local laws benefiting workers, and adds other provisions to ensure that benefits and protections for contract employees reach a certain minimum'". *Matthews v. Guest Servs., Inc.*, 2025 U.S. Dist. LEXIS 145209, at *14 (E.D.N.C. 2025) (quoting *Diaz v. General Sec. Servs. Corp.*, 93 F. Supp. 2d 129, 135–136 (D.P.R. 2000)). Indeed, "the establishment of labor standards falls within the traditional police power of the State" and therefore "pre-emption should not be lightly inferred in this area". *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987).

There are several statutory clues that evidence the fact that the SCA is meant to work in tandem with the DCWPCL. First, as stated in Appellants' Opening Brief, the lack of a private right of action on behalf of workers evidence Congress's intent

that it does not occupy the whole field. AOB at 47–48 (quoting *Inkrote*, 2009 U.S. Dist. LEXIS 101070, at *22).

Second, as the *Diaz* court noted, "[t]he SCA requires every service contract entered into by the United States, in excess of a certain sum, to include a provision for fringe benefits 'not otherwise required by Federal, State, or local law to be provided by the contractor or subcontractor'….This language manifestly assumes the application of local laws benefitting workers, and adds other provisions to insure that benefits and protections for contract employees reach a certain minimum." *Diaz*, 93 F. Supp. 2d at 135–136.

Third, the Seventh Circuit's analysis of Congress's intent in using the word "minimum," in the DBA, also used in the SCA, is helpful. *See* 41 U.S.C. § 6703(1) (highlighting Congress's use of the term "minimum"). "The use of the word minimum in the statute…is strong evidence of a congressional intention to have the statute read as complementary to state legislation. There is no doubt that congressional lawmakers were aware of their inherent authority to legislatively preempt state authority in the field by making the federal wage rate mandatory and preclusive of state (or employer) supplementation, however, the text of the statute itself establishes that they chose not to do so." *Frank Bros. v. Wis. DOT*, 409 F.3d 880, 887 (7th Cir. 2005) (citing *Hillsborough v. Automated Medical Labs, Inc.*, 471 U.S. 707, 718 (1985)).

Appellees have failed to explain how Congress intended for the SCA to occupy the entire field of unpaid wages for service contract employees. Certainly, Congress neither expressly nor impliedly sought to invade the traditional police powers of the states relating to labor standards, including wage payment and collection. There is simply no argument for any form of field preemption.

### 2. Conflict Preemption

Appellees next argue that conflict preemption applies because the DCMWA would stand as an obstacle to the objectives of the SCA. However, there is no conflict here because the goals and remedies of the SCA and DCWPCL are complementary and supplemental, they cannot possibly conflict with the federal scheme.

"[C]onflict pre-emption exists where 'compliance with both state and federal law is impossible,' or where 'the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Oneok*, 575 U.S. at 377 (quoting *California v. ARC America Corp.*, 490 U.S. 93, 100 (1989)). To justify conflict preemption, any conflict must be "irreconcilable" and "a hypothetical or potential conflict" is not sufficient. *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982). Finding conflict preemption is "a high threshold" *Whiting*, 563 U.S. at 607 (quoting *Gade*, 505 U.S. at 110). "Indeed, 'when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed

congressional intention to the contrary, to regard each as effective." *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143–144 (2001).

First, as Appellants noted in their Opening Brief, courts have found that the SCA is mutually supplemental to state and federal labor laws. AOB at 46, fn. 11.; *see also Masters v. Maryland Management Co.*, 493 F.2d 1329, 1332 (4th Cir. 1974) (finding that the provisions of the SCA and FLSA "may apply so far as they are not in conflict").

Indeed, the *Butler* court explained, in a case for untimely and unpaid wages under Louisiana's wage statute, that SCA did not preempt state wage remedies:

> The purpose of [the Louisiana statutes] is to compel the employer to pay the earned wages of an employee promptly after his dismissal or resignation. In contrast, the SCA's purpose and objective is to ensure that federal service contract employees are treated equally with employees in that locality by requiring the contractor to pay the prevailing wage and benefits. [The Louisiana statutes] do not prevent or interfere with the attainment of these federal goals. In fact, [the Louisiana statutes] help to effectuate the SCA. Depriving Louisiana employees of this remedy would be inconsistent with the objectives of the SCA when the SCA seeks to ensure that these same employees are guaranteed the same benefits as other employees in the same locality and state.

*Butler v. Fidelity Techs. Corp*, 685 So. 2d 676, 678–680 (La. Ct. App. 1996).

The fact that Appellants' claims under the DCWPCL furthers the basic purpose of the SCA supports the finding that there is no conflict preemption. *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 82 (1987) (finding no preemption

where a state statute furthered the "basic purpose" of a federal act). There is no conflict between the goals or remedies of the SCA or the DCWPCL.

#### iii. Appellants' DCWPCL Claims Rise Under Its Own Terms

Appellants' claims for the rates promised or owed under the DCWPCL rise under its own terms. Appellees continue to misunderstand Appellants' claims. To recast Appellants' claims they state that, "an employee can enforce agreements concerning wages and benefits that her employer promised *to her*, an employee cannot enforce her employer's service contract *with a government agency*." ARB at 46. But Appellants' claims are not seeking to enforce the SCA through a private right of action thereunder.[7] Neither are Appellants' claims an attempt to enforce a contractual right under a contractual theory.[8] Appellants' claims are premised under

[7] Unlike the issues presented under numerous cases cited by Appellees wherein litigants filed suit alleging a private right of action under the SCA. *See International Asso. of Machinists & Aerospace Workers v. Hodgson*, 515 F.2d 373, 379 (D.C. Cir. 1975) ("The issue here is whether the [SCA] provides any means by which the Union can recover damages from Boeing."); *see also District Lodge No. 166, International Ass'n of Machinists & Aerospace Workers v. TWA Services, Inc.*, 731 F.2d 711, 716 ("We hold that plaintiff cannot maintain a private right of action under the SCA against TWAS.").

[8] Unlike the issues presented in this matter, the cases cited by Appellees show instances where litigants filed suit under theories of contract or quasi-contract. *See Grochowski*, 318 F.3d at 85 (focusing on "plaintiffs' state-law claims for breach of contract and quantum meruit"); *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 116 (2011) (explaining the claims analyzed thereunder were "for the pharmaceutical companies' breach of contract.").

the rights and remedies of the DCWPCL which incorporate terms from the SCA and Appellees' contracts with the federal government.

As stated in Appellants' Opening Brief, there is a private right of action for under and untimely payment of "wages" as defined under District of Columbia law. AOB at 33. Indeed, "the remuneration promised by an employer to an employee shall be presumed to be at least the amount required by federal law, including federal law requiring the payment of prevailing wages, or by District law." D.C. Code § 32 1305(b).

Nothing disables Appellants' claims under the DCWPCL. "To find otherwise would require adopting the novel presumption that where Congress provides [little] remedy under federal law, state law may not afford one in its stead." *Rimaihi v. Avictecture, Inc.*, 2022 U.S. Dist. LEXIS 207937, at *11 (D.D.C. 2022) (quoting *Wigod*, 673 F.3d at 581). Because the SCA's administrative remedy is not exclusive and no form of implied preemption applies, the dismissal of the District Court is due to be reversed, and this matter remanded for further proceedings.

**c. Appellants Are Entitled to The Updated Wage Rates**

As explained in Appellants' Opening Brief, employees are entitled to updated wage rates when new wage determinations were updated on the public sam.gov website. AOB at 23–24. Even if the wage determinations do not update upon publication, the District Court should not have dismissed Appellants' claims because

Appellants alleged that they were not paid timely, even when subsequent wage determinations went into effect. AOB at 39.

First, the DOL's *Resource Book* is not "definitive legal advice", a fact entirely omitted from Appellees' analysis. *Compare* ARB at 58–62 *with Wage and Hour Division, Dep't of Lab.,* https://www.dol.gov/agencies/whd/government-contracts/prevailing-wage resource-book. This is important because the DOL *Resource Book* cited to language not present in regulatory source material, underscoring its unreliability. AOB at 25–26.

Second, Appellees claim without support that "effective" upon publication for wage determinations means those new determinations are what must be inserted into a contract. ARB at 61. However, this is at odds with language from the Federal Acquisition Regulations ("FAR"), which indicate that wage determinations may apply by operation of law. *See* 48 C.F.R. § 52.222-43(c), (d)(2). In administering the DBA, the DOL explains that "wage determinations are effective by operation of law even if they have not been attached to the contract." 29 C.F.R. § 5.5(a)(1)(i). This shows that wage determinations become effective upon publication.

Third, there is no nullity created by an operation of law function. ARB at 59. Each of the four required terms are always included in an SCA contract even if wage determinations are automatically effective. *See* 41 U.S.C. § 6703.

Further, Appellees citation to *Hodgson* is misleading. ARB at 61. In *Hodgson*, the Secretary of Labor did not issue a wage determination and thus there was no wage determination to be included, expressly or by operation of law, into the Boeing contract therein. *See* 515 F.2d at 376–377.

Finally, the language in the FAR about "receiving" a wage determination simply refers to the "date of publication on the WDOL Web site…" 29 C.F.R. § 4.5(a)(3).

## III. Conclusion

Appellees conjecture should not sway this Court. The District Court erred on all fronts. Appellees' obfuscation cannot obscure that. Section 6707(e) is clear on its face as multiple courts have found. Even if it were not, Appellants' reading would be the best reading. The DCWPCL provides both rights and remedies for Appellants' claims. Wage determinations are automatically effective on SCA contractors and, even if not, it was inappropriate for the District Court to dismiss Appellants' claims on that basis. Accordingly, this Court should reverse the holdings of the District Court and remand this matter for further proceedings in accordance with the same.

*/s/ Thomas J. Eiler*
Michael K. Amster, Esq.
Thomas J. Eiler, Esq.
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, MD 20910
(301) 587-9397

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

_x__ The brief contains _6,468____words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

____ The brief uses a monospaced typeface and contains ______ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

_x__ The brief has been prepared in a proportionally spaced typeface using MS Word 2007 in a 14 point Times New Roman font or

____ The brief has been prepared in a monospaced typeface using MS Word 2002 in a ___ characters per inch_________ font.

Date: 06/10/2026

/s/ Thomas Eiler
Thomas Eiler